[No. 45357. En Banc. November 16, 1978.]

WASHINGTON WATER POWER COMPANY, *Respondent,* v. WASHINGTON STATE HUMAN RIGHTS COMMISSION, *Appellant.*

*Slade Gorton, Attorney General,* and *G. Saxon Rodgers, Assistant,* for appellant.

*Paine, Lowe, Coffin, Herman & O'Kelly,* by *Gary A. Dahlke,* for respondent.

*M. Margaret McKeown* and *Diana F. Thompson* on behalf of Washington Women Lawyers, amicae curiae.

ROSELLINI, J.—In this action, brought under RCW 34.04-.070, the respondent obtained a declaratory judgment that a rule promulgated by the Washington State Human Rights Commission was in excess of its statutory authority. The statute under which the rule was made (RCW 49.60) defines unfair practices in employment and includes among such practices discrimination based on "marital status" (RCW 49.60.180).

The commission determined, after receiving a number of complaints, that there exists among some employers in the state an employment policy known as "anti–nepotism." Where a policy of this kind is adopted, the employer refuses to hire a spouse of an employee, and when two employees marry each other, one of the two is terminated. Some employers who have adopted this policy, among them the respondent, give the married couple an opportunity to decide which spouse will be discharged.[1] Where such policies are in effect, the refusal to hire an applicant and the discharging of a spouse is done without any consideration being given to the actual effect of the marital relationship upon the individual's qualifications or work performance.

After conducting hearings and inviting and receiving comments from interested parties, the commission determined that this practice, in cases where no actual business necessity was involved, constituted discrimination within the meaning and purpose of RCW 49.60.180, .190 and .200. The commission adopted WAC 162–16–150, the pertinent part of which reads:

WAC 162–16–150 Discrimination Because of Spouse. (1) *Authority.* This section implements RCW 49.60.180, 49.60.190 and 49.60.200, which declare that discrimination because of marital status or sex is an unfair practice of employers, labor unions, and employment agencies, respectively.

(2) *General Rule and Exception.* In general, discrimination against an employee or applicant for employment because of (a) what a person's marital status is; (b) who his or her spouse is; or (c) what the spouse does, is an unfair practice because the action is based on the person's marital status. It may also be an unfair practice because of sex, where it burdens women much more than men, or men much more than women. However, there are certain circumstances where business necessity may justify action on the basis of what the spouse does, and where this is so the action will be considered to come

---

[1]Anti–nepotism policies usually cover other close relatives of employees as well, but the commission did not find in the statute any expression of intent to prohibit this type of discrimination.

within the bona fide occupational qualification exception to the general rule of nondiscrimination. "Business necessity" for purposes of this section includes those circumstances where an employer's actions are based upon a compelling and essential need to avoid business–related conflicts of interest, or to avoid the reality or appearance of improper influence or favor.[2]

When, subsequently, it was confronted by employees who announced their intention to marry and to resist the discharge of one of the spouses, the respondent brought this suit to test the validity of the regulation. The Superior Court held that the words "marital status" should be given the literal meaning ordinarily accorded to them, and that one's "marital status", while it denotes the fact that one is or is not married, does not embrace the identity or situation of one's spouse. It held that the commission had exceeded its authority when it adopted a rule which forbade discrimination which looked beyond the employee's bare marital status to the identity and occupation of his or her spouse.

■ An administrative agency is limited in its powers and authority to those which have been specifically granted by the legislature. *Cole v. State Util. & Transp. Comm'n*, 79 Wn.2d 302, 485 P.2d 71 (1971). The legislature, however, may delegate the authority to make decisions involving administrative or professional expertise, which are necessary to carry out the purpose of the act. The general rule is that the constitutional prohibition against delegation of legislative power does not preclude delegation to administrative offices or boards of the power to determine some fact or state of things upon which application of the law is made to depend, provided the law enunciates standards by

---

[2]The remainder of the rule gives examples of discriminatory practices, requires that the "least discriminatory practice" be followed in any given situation, defines limitations on the employer's duty, places the burden of proving that a given discrimination is justified, explains the significance of discrimination as to relatives other than spouses, and advises that the commission's staff will give informal advice on compliance with the regulation.

which the officers or boards must be guided. *O'Connell v. Conte,* 76 Wn.2d 280, 456 P.2d 317 (1969).

The question before us, then, is whether the legislature intended to confine the commission, in its search for discriminatory practices, to instances where an individual is discriminated against solely because he is divorced, or widowed, or single, or married, without reference to the identity, occupation, affluence, or other attribute of the spouse.

■ Any inquiry into the legislative intent requires that we examine the statute as a whole and give effect to all its parts. *Greenwood v. State Bd. for Community College Educ.,* 82 Wn.2d 667, 513 P.2d 57 (1973). In determining legislative intent, the purpose for which a law was enacted is a matter of prime importance in arriving at a correct interpretation, and a thing which is within the object, spirit, and meaning of the statute is as much within the statute as if it were within the letter. *In re Estates of Donnelly,* 81 Wn.2d 430, 502 P.2d 1163, 60 A.L.R.3d 620 (1972).

At the beginning of the chapter is found its statement of purpose, which declares that it is enacted for the protection of the public welfare, health, and peace of the people and in fulfillment of the provisions of the constitution of this state concerning civil rights. It expresses a legislative finding that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, sex, marital status, age or the presence of any sensory, mental, or physical handicap are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. It further declares that the state agency which is created in the chapter and upon which it confers powers with respect to the elimination and prevention of discrimination, is given general jurisdiction and power for such purposes. RCW 49.60.010.

In RCW 49.60.020, a liberal construction of the statutory provisions is directed to achieve their purpose. In RCW 49.60.030, the right to be free from discrimination is

declared to be a civil right. While there is a definition section following, no attempt is made to define "race, creed, color, sex, marital status, or handicap." The legislature did find it necessary, however, to include "ancestry" within the definition of "national origin."

The legislature set up what is now known as the Human Rights Commission and gave it certain functions, powers and duties, among them the formulation of policies to effectuate the purpose of the chapter (RCW 49.60.110) and the promulgation of rules and regulations to carry out the provisions of the chapter and the policies and practices of the board in connection therewith (RCW 49.60.120(3)). The legislature gave the commission power to create advisory agencies and conciliation councils to study the problems of discrimination

> in all or specific fields of human relationships or in specific instances of discrimination . . . to make recommendations to the board for the development of policies and procedures . . .

RCW 49.60.130.

Provision is made for the holding of hearings and subpoenaing of witnesses. The act designates unfair practices with respect to credit transactions, insurance transactions, labor unions, employment, employment agencies, places of public resort, accommodation, assemblage, amusement, and real estate transactions. RCW 49.60.170–.200, .215, .220–.224. It is made an unfair practice to discriminate against a person opposing an unfair practice (RCW 49.60.210) or to aid a violation (RCW 49.60.220). The remainder of the chapter is devoted to enforcement provisions.

■ RCW 49.60.180(1) makes it an unfair practice for an employer to refuse to, among other things, hire any person because of such person's marital status, unless the refusal is based upon a bona fide occupational qualification.

Reading this chapter as a whole, it is apparent that the legislature intended to give to the commission broad powers

to investigate and formulate policies with respect to practices which involve discrimination based upon those attributes, conditions, and situations which it had found to constitute an unfair basis for such discrimination. It did not attempt to designate all of the practices which constitute such discrimination, but rather gave the board the authority to do so, after conducting the investigations, consultations and hearings provided for in the chapter. The designation of the types of discrimination condemned, taken in conjunction with the statement of policy and purpose, furnished guidelines for the board's determination.

Here complaints of citizens that they had been discriminated against because of their marital status drew to the commission's attention the practice of refusing to hire spouses, a practice known as "anti–nepotism." Its investigation revealed that in most cases there was no bona fide business justification for this discrimination. The record indicates that the commission took notice of the fact that employers who do not have such a policy have generally not been subjected to the evils feared by those who utilize it. It concluded therefore that, whether or not it is intended as such, the discharge of an employee or the refusal to hire an applicant because his or her spouse works for the employer necessarily involves an examination of an employee's marital status and therefore is discrimination based upon such status.

At the same time it recognized that there may be situations in which this type of discrimination is justified for legitimate business reasons, as where one spouse supervises the other, or audits his or her work, or where the spouses are in direct or potential competition with each other. Provision was made for such cases.

■ Administrative rules enacted pursuant to a specific legislative delegation are presumed to be valid and should be upheld on judicial review when they are reasonably consistent with the statute being implemented. Also, in construing an ambiguous statute, a court must give great weight to the statute's interpretation by the administrative

agency which is charged with its administration, absent a compelling indication that such interpretation conflicts with the legislative intent. *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 545 P.2d 5 (1976).

We think the commission was justified in its interpretation of the policy and purpose of the act, when it concluded that the legislature did not intend to restrict its coverage to cases where the employer refuses to hire any married person—or any unmarried person. The fact that the commission was given broad policy formulation and rule making powers indicates a legislative recognition that all of the circumstances in which discrimination might exist and all of the forms which it might take were not then known and could not be anticipated, and that the diligence and expertise of an administrative agency were needed to achieve the purpose intended in the statute.

When read in the light of the entire statute, the provision which makes it an unfair practice to refuse to hire any person "because of such person's . . . marital status" is broad enough in its import to cover the situation involved here.

The respondent argues that the legislature could not have intended this provision to apply to anti–nepotism practices because at the time the marital status amendments were adopted, the House of Representatives itself had a rule which made spouses of its members ineligible for employment in the house. The rule, we note, also made persons over 70 ineligible, an unfair practice under the statute. The respondent's theory is that the members of the house could not have entertained an intent inconsistent with their own house rule.

We know of no principle of statutory construction which holds that the rules of a legislative body are relevant and persuasive in the interpretation of a statute. Furthermore, the rule, at least with respect to the provision making spouses ineligible, may well have some justification. The house is in a different position from the private employer, in that its employees are paid out of public funds over which the legislature exercises control, and it is quite likely

that nepotism in the hiring of employees is not looked upon with favor by the public. The need for the "appearance of fairness" in this situation may well outweigh the spouses' interest in obtaining employment unburdened by marital status discrimination.

However, we do not propose to assess the validity of the house rule under that statute. We are unaware of any authority and none has been shown which holds that a house rule is legislative history or a proper source to examine when looking for legislative intent, and no reason having been advanced to justify the adoption of such a principle, we do not find the apparent inconsistency sufficiently relevant to overcome the intent expressed in the statute.

It was within the statutory authority of the commission to adopt the rule in question. Since we have determined that the commission was justified in determining that the discrimination involved in the respondent's anti-nepotism policy was based upon marital status, we need not assess the further argument, advanced by the commission and amicae curiae, that employment policies of this kind often result in sex discrimination as well.

By a trial amendment consented to by the commission, the respondent asked the court below for a declaratory judgment that the commission has no statutory authority to process complaints alleging unfair practices because of marital status. The Superior Court did not pass upon this question, evidently concluding that it was immaterial, in view of its holding that the respondent's anti-nepotism policy was beyond the reach of the statute.

If RCW 49.60.120(4) is read in isolation, it would appear that the respondent's contention indeed has merit. That section provides:

(4) To receive, investigate, and pass upon complaints alleging unfair practices as defined in this chapter because of sex, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap.

■ However, when the chapter is examined as a whole, an ambiguity is seen. The section omits not only marital status (discrimination on the basis of which is defined as an unfair practice in RCW 49.60.176, .178; 49.60.180(1)–(4); 49.60.190, .200 and .222), but it also omits age (made an unfair basis for discrimination in RCW 49.60.180(1)–(4), .190 and .200), fact of opposition to unfair practices (RCW 49.60.210) and the aiding of violations (RCW 49.60.220). RCW 49.60.230 expressly grants to persons suffering discrimination forbidden by these sections the right to file complaints and RCW 49.60.240 mandates the commission to investigate all complaints and make findings with respect to them.

The court's duty in interpreting a statute is to make it purposeful and effective. *State v. Hull,* 86 Wn.2d 527, 546 P.2d 912 (1976). Only if the recitation of bases of discrimination found in RCW 49.60.120(4) is viewed as illustrative rather than inclusive, can effect be given to the entire statute. Consequently, it is this interpretation which we adopt.

The judgment is reversed.

HAMILTON, STAFFORD, UTTER, HOROWITZ, and DOLLIVER, JJ., concur.

HICKS, J. (dissenting)—The issue presented is whether the Washington State Human Rights Commission exceeded its authority when it adopted a rule under RCW 49.60 in which the prohibition against marital status discrimination was extended beyond a person's marital status per se to the identify or occupation of his or her spouse. The trial court held that the commission's rule was promulgated in excess of its statutory authority. The majority imposes its legislative opinion regarding what the legislature should have enacted, and reverses the trial court. I dissent.

A litany frequently repeated by this court is that absent a statutory definition, words must be given their "ordinary, everyday meaning." *New York Life Ins. Co. v. Jones,* 86 Wn.2d 44, 47, 541 P.2d 989 (1975). When questioned as to

"marital status", one does not ordinarily respond by identifying one's spouse and his or her occupation. The appropriate and ordinary response is to indicate whether one is married, single, widowed or divorced "without reference to identity, occupation, affluence or other attributes of the spouse."

While the commission has broad authority to investigate and promulgate rules, it may not exceed the authority granted it to "carry out the provisions" of RCW 49.60. Under the chapter it is an "unfair practice", *inter alia,* to hire or discharge any person "because of" such person's "marital status"—*not* because of "(b) who his or her spouse is; or (c) what the spouse does . . ." WAC 162–16–150. I am unwilling to sanction the commission's extension of its own powers without legislative authority.

WRIGHT, C.J., and BRACHTENBACH, J., concur with HICKS, J.