No. 80-344

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

JAMES THOMPSON and WILLIAM BOISVERT,

Plaintiffs and Appellants,

vs.

BOARD OF TRUSTEES, SCHOOL DISTRICT NO. 12,
HARLEM, BLAINE COUNTY, MONTANA,

Defendant and Respondent.

---

Appeal from: District Court of the Twelfth Judicial District,
In and for the County of Blaine
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellants:

Weber, Bosch, Kuhr, Dugdale, Warner & Martin, Havre,
Montana
John Warner argued and Mary VanBuskirk, Havre, Montana

For Respondent:

Donald Ranstrom, County Attorney, argued, Chinook, Montana

For Amicus Curiae:

Frederick F. Sherwood, Human Rights Division, Helena,
Montana
Emilie Loring argued, Great Falls, Mont.

---

Submitted: March 25, 1981

Decided: May 6, 1981

Filed: MAY - 6 1981

_Thomas J. Kearney_
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

William Boisvert appeals from a summary judgment entered against him in favor of the defendant Board of Trustees, School District No. 12, Harlem, Blaine County, Montana, by the Twelfth Judicial District Court, Blaine County.

The issue determined by us in this appeal is the meaning of the term "marital status" as used in the Human Rights Act, sections 49-2-101, et seq., MCA, and the Governmental Code of Fair Practices, sections 49-3-101, et seq., MCA.

William Boisvert, as high school principal for the defendant school board, and James Thompson, as superintendent of schools, filed a joint complaint alleging that the school board employment policy was discriminatory to them because of their marital status.

Boisvert had been employed by the school board for 13 years. For the last 2 of those years, he had been the principal of Harlem High School. Before that he was a teacher. He is married to a tenured teacher employed for several years at the junior high school by the school board.

James Thompson had been employed by the school board for 22 years; the first 6 years as a teacher; the next 13 years as an elementary school principal; and for the last 3 years as superintendent of schools. His wife is also a tenured teacher in the Harlem school system.

On October 16, 1979, the school board adopted a policy, to be effective July 1, 1980, incorporated in the following resolution:

> "That all school administrators of the Harlem
> Public Schools shall not have a spouse employed
> in any capacity in the Harlem school system."

On December 19, 1979, the school board terminated James Thompson's employment as superintendent and reduced in rank

William Boisvert from high school principal to classroom teacher. The sole reason given by the school board for Thompson's termination and Boisvert's reduction in rank was the policy as set forth in the resolution.

In their complaint, Thompson and Boisvert alleged that the school board's action was discriminatory. They requested the District Court to enjoin the school board from so acting with respect to their employment, and to determine that the school board resolution was void as contrary to law.

The school board filed a motion for summary judgment after the court had denied plaintiffs' motion for an injunction pendente lite. The District Court granted the motion for summary judgment on August 12, 1980 and judgment thereon was entered on August 26, 1980. William Boisvert timely appealed.

This appeal turns on the meaning of the term "marital status", as it appears in the governing statutes, section 49-2-303(1)(a) and 49-3-201(1), MCA.

Section 49-2-303(1)(a) reads in part as follows:

"(1) It is an unlawful discriminatory practice for:

"(a) an employer to refuse employment to a person, to bar him from employment, or to discriminate against him in compensation or in a term, condition, or privilege of employ- ment because of his . . . marital status. . ."

Section 49-3-201(1) reads in part:

"State and local government officials and supervisory personnel shall recruit, appoint, assign, train, evaluate, and promote personnel on the basis of merit and qualifications without regard to . . . marital status . . ."

In reaching its decision, the District Court decided two subissues: (1) that under the statutes, the resolution of the school board cannot be defended or supported on the basis of justification or reasonable grounds for its action, and (2) that the legislature intended the term "marital status" to be defined as the "state of being married, unmarried,

-3-

divorced, or widowed." Using that definition, the District Court determined that the policy adopted by the school board did not require a person to have any particular marital status in order to qualify for employment or to retain employment.

We find that the term "marital status" should be more broadly interpreted to accomplish the legislative objective of removing discriminatory practices in employment and therefore reverse the District Court.

We look first at the school board's contention that the policy was adopted without discriminatory intent, and that their policy could be defended as "based on reasonable grounds."

The school board argues that section 49-2-308(1) governs. That section reads as follows:

> "It is an unlawful discriminatory practice for the state or any of its political subdivisions: (1) to refuse, withhold from, or deny to a person any local, state, or federal funds, services, goods, facilities, advantages, or privileges because of . . . marital status . . . unless based on reasonable grounds."

The clause "based on reasonable grounds" does not appear in section 49-2-303(1)(a), MCA, nor in section 49-3-201(1), MCA, which we have quoted above. The District Court noted that both sections 49-3-303 and 49-2-303, relate directly to discriminatory practices in "employment". On the other hand, in section 49-2-308, above quoted, the word "employment" is not mentioned in the statute which allows for a possibly discriminatory practice if it is "based on reasonable grounds". On that distinction, therefore, the District Court concluded, and we agree, that insofar as "employment" is concerned, the legislature has not provided a justification basis for a discriminatory practice in employment on "reasonable

-4-

grounds." In so construing the statutes, the District Court ascertained and declared their substance from the plain meaning of the words used, and found no reason to insert what had been omitted by the legislature in determining the legislative intent. Chennault v. Sager (1980), ____ Mont. ____, 610 P.2d 173, 37 St.Rep. 857; Haker v. Southwestern Ry. Co. (1978), 176 Mont. 364, 578 P.2d 724.

However, we do not agree with the District Court's interpretation of the term "marital status" used in the antidiscriminatory employment statutes.

In construing statutes, whether or not they are in derogation of common law, we are required to construe their provisions liberally, and all proceedings under them, with a view to effect their objects and to promote justice. Section 1-2-103, MCA. The term "marital status" is not defined anywhere in the statutes relating to antidiscriminatory employment practices, and our interpretation of the term should be directed to promoting the objectives of these statutes. We therefore hold that a liberal definition of the term "marital status" as used in those statutes, includes the identity and occupation of one's spouse. Both statutes are strongly worded directives from the legislature prohibiting employment discrimination and encouraging public employers to hire, promote and dismiss employees solely on merit. Sections 49-3-201(1) and 49-2-303(1)(a), MCA. A narrow interpretation of the term "marital status" is unreasonable, and could lead to an absurd result. In this case, if plaintiff and his wife were simply to dissolve their marriage, both could keep their jobs. But for the fact this plaintiff is married, he would still be working. The term "marital status" as a protected classification in the statutes was included to cover this type of unjustified discrimination.

-5-

By construing these statutes to find that there is no "reasonable grounds" exception to discriminatory employment practices, and by determining that "marital status" includes the identity and occupation of one spouse as well as whether one is married, single, widowed or divorced, we conclude that plaintiff is entitled to judgment on his complaint as a matter of law. There is no need therefore, for us to reach the question, advanced in part by amici curiae, whether a further hearing is necessary to determine the "business necessity" or "reasonable grounds" basis for the policy adopted by the school board. See, Kraft, Inc. v. State (Minn. 1979), 284 N.W.2d 386; Wash. Water Power v. Wash. State Human Rights (1978), 91 Wash.2d 62, 586 P.2d 1149; Griggs v. Duke Power Co. (1971), 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. Justification clauses in employment antidiscrimination statutes give rise to cases of disparate impact such as Wash. Water Power, supra, and to disparate treatment cases. See, Yvonne Martinez v. Yellowstone County Welfare Department (Decided March 27, 1981, 38 St.Rep. 474). The inclusion of justification clauses in this kind of legislation is a matter of legislative action and is not within the function of this Court.

The summary judgment in favor of the school board is vacated, and this cause is remanded to the District Court for further proceedings in accordance with this opinion.

John L. Sheehy
Justice

We Concur:

_John Conway Harrison_

_Gene B. Daly_

_Daniel J. Shea_

------------------------------
Justices

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent from the majority opinion.

The District Court construed "marital status" narrowly because the court found that there was no "business necessity" exception under Montana law. The District Court felt that, in certain cases, business necessity would justify a discrimination based upon the occupation of spouses. Therefore, the court reasoned that the legislature must not have contemplated a broad meaning of marital status which would include looking to the spouse's occupation.

I agree, but for reasons stated herein, feel that discrimination based upon the occupation of a spouse violates the legal principle opposing discrimination which has a "disparate impact". However, in "disparate impact" cases a discriminatory practice can be sanctioned where there is a business necessity.

The majority's opinion forecloses an employer from passing a rule which would prohibit one spouse from auditing or supervising the work of the other spouse. The legislature could not have intended such a result.

Section 49-2-303(1)(a), MCA, states that it is an unlawful discriminatory practice for an employer to refuse employment to a person because of his marital status. If the action of the school board had an "adverse impact" on married people, then the action would be proscribed unless there was an overriding "business necessity". This result attaches if the term "marital status" only refers to the state of being "married", "single" or "divorced".

The United States Supreme Court dealt with "disparate impact" in Griggs v. Duke Power Co. (1971), 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. In that case the defendant was

an employer which required either a high school education or the passing of a standardized general intelligence test as a condition of employment. This practice rendered blacks ineligible in markedly disproportionate numbers. The following excerpt is taken from the court's opinion:

> ". . . The Act proscribes not only overt discrim-
> ination but also practices that are fair in form,
> but discriminatory in operation. The touchstone
> is business necessity. If an employment practice
> which operates to exclude Negroes cannot be shown
> to be related to job performance, the practice is
> prohibited." Griggs, 401 U.S. at 431.

The "adverse impact" theory of discrimination has been extended to sex discrimination cases. See Dothard v. Rawlinson (1977), 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786.

A "no spouse" rule inevitably has an adverse impact on married people. The only remaining question is whether there is a "business necessity" for the "no spouse" rule. Therefore, this case should be remanded to the District Court with instructions to consider the issue of whether there are reasonable grounds for justifying the "no spouse" policy adopted by the school board. The defendant should be required to prove the business necessity for the policy, and the plaintiffs should be given the opportunity to show that the same ends could be achieved with a lesser discriminatory impact.

It should also be pointed out that Yvonne Martinez v. Yellowstone County Welfare Department (Decided March 27, 1981, 38 St.Rep. 474), arose under section 49-2-303(1)(a), MCA, and does not involve a "justification clause" in an anti-discrimination statute. The Martinez case arose under the same statute relied upon by the majority in deciding this case. The majority's reference to Martinez is inaccurate.

Wash. Water Power v. Wash. State Human Rights (1978), 91 Wash.2d 62, 586 P.2d 1149, is not a "disparate impact" case. The Wash. Water Power case arose under an anti-discrimination statute which prohibited discrimination based upon "marital status" unless there was justification for such discrimination. The Washington court broadly construed the term "marital status" to include the occupation of a spouse, but the statute specifically provided for a business necessity justification. The concept of "disparate impact" is not discussed contrary to the statement made in the majority opinion.

For the reasons herein stated I dissent from the majority opinion and would remand the case to the District Court for a hearing on whether a "business necessity" justifies the school board's action.

_____
Justice