[No. 54666–5. En Banc. November 17, 1988.]

LOUISE M. EDWARDS, *as Personal Representative, Petitioner*, v. FARMERS INSURANCE COMPANY OF WASHINGTON, *Respondent*.

*Nielsen, Nielsen & Leach, P.S.,* by *J. Robert Leach,* for petitioner.

*Robert E. Brooke,* for respondent.

DURHAM, J.—A claimant seeks to recover under two underinsured motorist policies issued by Farmers Insurance Company (Farmers). Farmers argues that two provisions— one entitled "Limits of Liability", and the other entitled "Other Insurance"—prohibit stacking these recoveries. We hold that stacking is not precluded by the limits of liability provision. However, we are unable to conclusively determine if the other insurance provision prohibits double recovery and we remand the case for further fact–finding on this issue.

# I
## FACTS

Kenneth J. Edwards was killed by an uninsured motorist on November 30, 1982. Kenneth and his wife, Louise, each had separate automobile insurance policies with Farmers Insurance Company. At the time of the accident, Kenneth was driving a GMC truck for whom the named insured was Louise. Kenneth was the named insured on a Pinto automobile.

Each policy had underinsured motorist protection in the amount of $50,000 per person per loss. Kenneth was covered as an insured person under both policies.[1] Accordingly, Kenneth's estate sought to recover damages under both policies. Farmers paid $50,000 pursuant to Louise's policy. However, Farmers refused to pay an additional $50,000 pursuant to Kenneth's policy, arguing that the policy's other insurance and limits of liability provisions prohibit such a double recovery.

Kenneth's estate brought an action seeking a declaratory judgment that it was entitled to recover under both policies. The parties each moved for summary judgment.

---

[1]Under each policy, Farmers agreed to pay damages for bodily injury which an insured person is legally entitled to recover from an underinsured motorist. Kenneth was an insured person under Louise's policy because he was injured while occupying Louise's insured car, and also because he qualified as Louise's family member. Kenneth was an insured person under his own policy because he was the named insured therein.

Farmers relied on the other insurance and limits of liability provisions to argue that it is not obligated beyond the single $50,000 payment it has already made. Kenneth's estate contended that the other insurance section was void under RCW 48.30.300 because it discriminates based on marital status, and that the limits of liability section is inapplicable to this case.

The trial court held that the other insurance provision discriminates on the basis of marital status and entered a summary judgment in favor of Kenneth's estate. The trial court's order did not address the limits of liability issue.

The Court of Appeals concluded that the other insurance section was not discriminatory and remanded for the trial court to enter summary judgment in favor of Farmers. *Edwards v. Farmers Ins. Co.*, 48 Wn. App. 399, 739 P.2d 107 (1987). Because of this holding, the court did not analyze the limits of liability issue. *Edwards*, at 404. We granted review.

## II
### LIMITS OF LIABILITY PROVISION

The limits of liability provision at issue in this case reads in full as follows:

Limits of Liability
The limits of liability shown in the Declarations apply subject to the following:
1. The limit for "each person" [$50,000] is the maximum for *bodily injury* sustained by any person in any one *accident*. . . .
2. Subject to the limit for "each person," the limit for "each *accident*" [$100,000] is the maximum for bodily injury sustained by two or more persons in any one *accident*.
3. Subject to the law of the state of the *accident, we will pay no more than these maximums regardless of the number of vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the accident.*

(Some italics ours.) Farmers argues that the inclusion of the term "policies" in paragraph 3 evidences an intent to

limit Farmers' aggregate liability under all policies to $50,000. We disagree.

■ The limits of liability provision describes only Farmers' liability under that particular policy, not its aggregate liability under all applicable policies. The issue of Farmers' aggregate liability under multiple policies is dealt with elsewhere in the policy, in an other insurance provision:

Other Insurance
1. The amount of bodily injury coverage provided under this part shall be reduced by the amount of any other bodily injury coverage available to any party held to be liable for the *occurrence.*
2. Except as provided in paragraph 1 above, if any other Automobile Liability Insurance applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.
3. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
4. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

This other insurance provision fully addresses the issue of Farmers' liability when more than one insurance policy is at issue. Comparing this provision with the limits of liability provision, it is clear that the latter is relevant only to the issue of Farmers' liability under that particular policy. Moreover, we reject the conclusion that both provisions can be applied in the context of multiple policies, in that the application of one provision would not always yield the same result as application of the other.[2]

---

[2]For example, the other insurance section limits claimants' aggregate recovery to the highest limits of any other applicable Farmers policy, while the limits of liability section would restrict recovery to the limits of that particular policy. Conflicting results would be reached if the policies had limits in differing amounts.

Further evidence that Farmers' limits of liability provision does not address aggregate liability under multiple policies is the provision's parallel to RCW 48.22.030(5), which reads as follows:

The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

This statute is directed toward the concept of "internal stacking", that is, multiple recoveries under a *single* policy. *See Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 531–32, 707 P.2d 125 (1985); Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds*, 55 Wash. L. Rev. 819, 823 n.26 (1980) (the statute "allows the insurer to prevent stacking between vehicles insured on the same policy"). It does not also address external stacking. Compare RCW 48.22.030(6). Farmers' limits of liability provision, being derived from RCW 48.22.030(5), similarly should not be construed as addressing external stacking.

In light of the foregoing, we conclude that the limits of liability section does not bar the estate from recovering under both policies.

## III
### OTHER INSURANCE PROVISION

Whereas the limits of liability clause in Kenneth's policy prohibits internal stacking, the other insurance clause prohibits external stacking, that is, recovery under more than one policy.[3]

---

[3]The Legislature has authorized insurers to use such a provision in underinsured motorist coverage:

"The policy may provide that if an injured person has other similar insurance available to him under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages." RCW 48.22.030(6).

Read in conjunction with the policy's definition of "you"—"Throughout this policy, 'you' and 'your' mean the 'named insured' shown in the Declarations and spouse if a resident of the same household"—the other insurance provision states:

> If any applicable insurance other than this policy is issued to [the named insured, or the named insured's spouse if residing in the same household] by us . . ., the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

Because Kenneth and Louise were living in the same household as husband and wife, the other insurance section would apply to restrict the estate's recovery to $50,000, rather than the $100,000 it would receive by stacking recoveries from the two policies.

Kenneth's estate contends that the other insurance provision is void because it discriminates against married couples in violation of RCW 48.30.300, which provides in part as follows:

> *The amount of [insurance] benefits payable,* or any term, rate, condition, or type of coverage *shall not be restricted,* modified, excluded, increased or reduced *on the basis of the* sex or *marital status,* or be restricted, modified, excluded or reduced on the basis of the presence of any sensory, mental, or physical handicap *of the insured or prospective insured.* These provisions shall not prohibit fair discrimination on the basis of sex, or marital status, or the presence of any sensory, mental, or physical handicap when bona fide statistical differences in risk or exposure have been substantiated.

(Italics ours.) RCW 48.30.300.

The estate points out that married couples who reside together and who individually own separate Farmers policies are disadvantaged when compared to similarly situated unmarried couples. If Kenneth and Louise had been unmarried cohabitants, then the estate could have recovered under both policies, the other insurance provision not

being applicable. Thus, the estate complains that Farmers improperly discriminated on the basis of marital status.

Farmers counters that the other insurance provision does not violate RCW 48.30.300 because it does not always discriminate between married and single individuals. Coverage under the other insurance clause turns not solely on marriage, but also on the spouse's residence and the identity of the insurer on the other policy. Accordingly, married and single individuals are not always treated disparately, depending on the outcome of the other two factors. For example, neither married couples nor unmarried couples are prevented from stacking recoveries if they are living separately. Farmers contends that the presence of these other classifications means that the provision does not improperly discriminate on the basis of marriage.

The Court of Appeals agreed with Farmers' position. The court concluded that because the other insurance section did not restrict coverage *solely* on the basis of marital status, it did not violate RCW 48.30.300. *Edwards,* at 403–04.

■■ Marital status discrimination is addressed in a number of Washington statutes, which either prohibit such discrimination entirely or label it an unfair practice. *See, e.g.,* RCW 48.30.300 (quoted above); RCW 49.60.175 (unfair practices of financial institutions); RCW 49.60.176 (unfair practices with respect to credit transactions); RCW 49.60-.178 (unfair practices with respect to insurance transactions); RCW 49.60.180 (unfair practices of employers); RCW 49.60.222 (unfair practices with respect to real estate transactions). These statutes, however, have proven surprisingly difficult to interpret. There can be no doubt that these statutes apply when the discrimination is based solely on the person's status as a married person. For example, if an insurer refuses to issue insurance to an individual solely because he is married, there is no dispute that marital status discrimination has occurred.

However, difficulties arise when classifications are based in part on marital status and in part on other factors. One example of this type of mixed classification arises in the context of "anti–nepotism" policies, under which an employer refuses to hire, or discharges, a person because his or her spouse is already an employee. The classification in such policies is not simply one of marriage, but one of marriage *and* the spouse's employment. Some courts in other states have refused to apply their anti–discrimination statutes to these policies, choosing instead to restrict the reach of their statutes to the "pure" marriage distinction, that is, whether an individual has a spouse. *See, e.g., Miller v. C.A. Muer Corp.,* 420 Mich. 355, 362 N.W.2d 650, 44 A.L.R.4th 1035 (1984); *Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Bd.,* 51 N.Y.2d 506, 415 N.E.2d 950, 434 N.Y.S.2d 961 (1980); *see generally* Annot., *What Constitutes Employment Discrimination on Basis of "Marital Status" for Purposes of State Civil Rights Laws,* 44 A.L.R.4th 1044, §§ 4, 6(b) (1986).

This court, however, has held that an anti–discrimination statute applies more broadly, so as to reach the mixed classifications present in anti–nepotism policies. In *Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 586 P.2d 1149 (1978), the Human Rights Commission had determined that employers' anti–nepotism policies constituted unfair discrimination on the basis of marital status under RCW 49.60.180(1) (making it an unfair practice for an employer to refuse to hire any person because of marital status). In upholding the Commission's interpretation of RCW 49.60.180(1), we stated that the statute was intended to prohibit this type of classification, not just those distinctions that are based solely on marital status. *Washington Water Power,* at 69. Other courts also have reached this result. *See, e.g., Kraft, Inc. v. State,* 284 N.W.2d 386 (Minn. 1979); *Thompson v. Board of Trustees, Sch. Dist. 12,* __ Mont. __, 627 P.2d 1229 (1981); *see generally* Annot., 44 A.L.R.4th §§ 3, 6(a).

However, even the states that have read their statutes more expansively have placed limits on their application. The Minnesota Supreme Court declined to apply its marital anti–discrimination statute to a case where a teacher alleged that she had not been hired because of the pro–teaching views of her husband, the court concluding that "the alleged immediate reason for the discrimination is not directed at the institution of marriage itself, at least not with the same directness and closeness as in *Kraft [Inc. v. State, supra]." Cybyske v. Independent Sch. Dist. 196,* 347 N.W.2d 256, 261 (Minn.), *cert. denied,* 469 U.S. 933 (1984).

The same is true in Washington. In *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 687 P.2d 1139 (1984), this court held that certain family exclusion clauses in home-owners insurance policies do not discriminate on the basis of marital status. The policy at issue in *Emerson* excluded recovery for bodily injury to any insured, and then defined "insured" as:

"(1) The Named Insured stated in the Declarations of this policy; (2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty–one in the care of any Insured . . .'"

*Emerson,* at 479 n.1. Despite the presence of "spouse" in the definition, the court treated the clause not as a marital exclusion but as an exclusion of all family members. *Emerson,* at 480–81. Thus, even though a distinction along family lines also serves to classify married couples differently than unmarried couples, the court held that there was no discrimination on the basis of marital status. Although not expressed in that opinion, the reasoning behind *Emerson* is similar to that stated in *Cybyske:* the discrimination in *Emerson* was not as closely related to the institution of marriage as was the distinction in *Washington Water Power.*

The present case is more closely analogous to the classification found to be discriminatory in *Washington Water Power* than it is to the nondiscriminatory classification of

*Emerson.* Farmers' classification is made to turn specifically on marriage, and then is further qualified with more restrictive qualifications, just as occurred in *Washington Water Power.* In *Emerson,* the classification turned less on marriage than on the family. Thus, we conclude that Farmers' other insurance clause discriminates on the basis of marital status pursuant to RCW 48.30.300.[4]

This conclusion, however, does not end our analysis. As the statute expressly states, its "provisions shall not prohibit fair discrimination on the basis of . . . marital status . . . when bona fide statistical differences in risk or exposure have been substantiated." Accordingly, the other insurance provision, although discriminatory, does not violate the statute if the insurance company can present bona fide statistical differences in risk or exposure. Because the parties did not brief this issue in the trial court or on appeal, we remand the case to the trial court so that Farmers may present evidence on this question.

If justification is shown on remand, then the other insurance provision is fully enforceable and precludes the estate from stacking recoveries. If, however, justification is not shown, then the provision violates RCW 48.30.300 and is void. The estate then would be able to recover under both policies.

## IV
### CONCLUSION

The "limits of liability" provision does not preclude the estate from stacking recoveries in this case. The "other

---

[4]One additional case deserves mention here. In *Furlong v. Farmers Ins. Co.,* 44 Wn. App. 458, 721 P.2d 1010, *review denied,* 107 Wn.2d 1017 (1986), the court had before it the same other insurance clause that is at issue here. The court rejected a similar argument based on "marital status" discrimination but did so in a manner inapplicable to this case. An injured person attempted to recover under both his mother's insurance policy and his stepfather's, but Farmers declined to do so pursuant to the other insurance clause. The Court of Appeals held that, because the injured person was not himself married, and because he had not adequately briefed the issue, "he had not demonstrated how the policy could be discriminatory *as to him.*" (Italics ours.) *Furlong,* at 461 n.2. *Furlong* thus does not conflict with our present holding.

insurance" provision does not preclude stacking if it is void under RCW 48.30.300 for discriminating on the basis of marital status. On that issue, a remand is necessary to determine if the discrimination is justified by bona fide statistical differences in risk or exposure. This case is remanded to the trial court for further proceedings consistent with this opinion.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and CALLOW, JJ., and HAMILTON, J. Pro Tem., concur.