**AMERICAN HOME ASSURANCE CO., Plaintiff,**

**v.**

**David COHEN dba Totem Lake Counseling Services, Theresa D. Scott and Joseph W. Scott, Defendants.**

No. C92–923Z.

United States District Court,
W.D. Washington, N.D.

March 3, 1993.

Matthew T. Boyle, Mitchell, Lang & Smith, Seattle, WA, for plaintiff.

David A. Summers, Edmonds, WA, for defendant.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on plaintiff's motion for summary judgment against the defendants Theresa and Joseph Scott and for default judgment against defendant Dr. David Cohen, docket no. 10, and the defendants Scotts' cross motion for summary judgment, docket no. 18. The Court heard oral argument on January 29, 1993. The Court has reviewed all of the records and files herein, including the parties' supplemental briefs regarding the public policy issues, and the Court, being fully advised, hereby DENIES plaintiff's motion for summary judgment against the defendants Scotts and GRANTS in part and DENIES in part defendants Scotts' cross motion for summary judgment. The Court also strikes plaintiff's motion for default judgment against defendant Cohen, without prejudice. This order relating to coverage will apply to all parties.

## BACKGROUND

American Home Assurance Company (hereinafter "American Home") is an insurance company incorporated in the State of New York. American Home issued to Dr. Cohen, a licensed psychologist in Washington, a policy of psychologist's professional liability insurance ("Policy"), with a liability limit of $1,000,000, for the period from August 1, 1986 to August 1, 1987. Policy at 1, Exh. B, Boyle's Decl., docket no. 12.

In January 1992, the Scotts, residents of Washington state, sued Dr. Cohen in King County Superior Court for professional negligence, breach of fiduciary duty, and loss of consortium. They allege that while Theresa Scott was in psychotherapy treatment under the care of Dr. Cohen from about November 1986 to November 1989, Dr. Cohen committed a number of acts that constitute malpractice. The Scotts claim that Dr. Cohen induced Ms. Scott to engage in sexual intercourse with him during these therapy sessions, failed to provide any therapy to Ms. Scott, and failed to seek consultation or supervision from other professionals regarding his conduct toward her. According to the complaint, Dr. Cohen's sexual intimacies with Ms. Scott continued on a regular basis until December 1991. After that time, the complaint states, Dr. Cohen tried to induce Ms. Scott to return to see him, and threatened to take his life if she revealed what had transpired between them. *See* Complaint, *Scott v. Cohen, et al.*, No. 92–2–01850–1, (King County Super.Ct. Jan. 24, 1992), Exh. A, Boyle's Decl., docket no. 12. The Scotts' Complaint was recently amended to allege separate claims for each of Dr. Cohen's alleged errors. *See* Amended Complaint, Scotts' Suppl.Resp. to American Home's Motion for Summary Judgment, docket no. 25.

American Home is currently defending Dr. Cohen in the state action subject to a reservation of rights. At the same time, American Home has filed the present action in this Court against Dr. Cohen and the Scotts for declaratory relief. American Home seeks a declaratory judgment that the Policy excludes coverage for the alleged sexual misconduct by Dr. Cohen or, in the alternative, that the Policy's special provision concerning sexual misconduct limits American Home's liability to $25,000 for all claims arising out of the therapeutic relationship between Dr. Cohen and Ms. Scott, even those alleging non-sexual misconduct. *See* Plaintiff's Memorandum, docket no. 11.

The Scotts have filed a cross motion for summary judgment arguing that the Policy provides coverage for the injuries alleged in their complaint against Dr. Cohen; that the sexual misconduct provision, which has a $25,000 sublimit, violates public policy; and that the alleged non-sexual misconduct by Dr. Cohen is subject to the Policy limit of $1,000,000. *See* Scotts' Memorandum, docket no. 18.

Dr. Cohen has failed to file an answer to American Home's complaint, and this Court has granted plaintiff's motion for default

against defendant Dr. Cohen by minute order dated January 5, 1993, docket no. 26.

## DISCUSSION

### A. *Summary Judgment Standard*

■ Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In accordance with this standard, the question is whether the evidence, together with permissible inferences drawn from that evidence, is sufficient to establish a "genuine issue as to any material fact." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir.1989), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

### B. *Applicable Law*

■ In a diversity action, a federal court must apply the law of the forum. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 71–80, 58 S.Ct. 817, 819–823, 82 L.Ed. 1188, 1190–1195 (1938). Under Washington law, the interpretation of an insurance contract is a matter of law. *McDonald v. State Farm Fire and Cas. Co.*, 119 Wash.2d 724, 730, 837 P.2d 1000, 1003 (1992). Summary judgment is proper unless an ambiguity in the contract exists and contradictory evidence is introduced to clarify the ambiguity. *Time Oil Co. v. Cigna Property and Cas. Ins. Co.*, 743 F.Supp. 1400, 1406–7 (W.D.Wash.1990). The public policy issue before the Court is subject to the general rule that "[i]n a diversity case, 'where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it.' " *Westlands Water Dist. v. Amoco Chemical Co.*, 953 F.2d 1109, 1111 (9th Cir.1991) (citations omitted).

### C. *The Exclusionary Provision under Paragraph (p)*

The Policy issued by American Home provides for coverage of $1,000,000. The Policy contains exclusions and a $25,000 liability sublimit under a special provision concerning sexual misconduct. The exclusionary clause and the special provision at issue are set forth in the Policy as follows:

> [ ... ] NOTE ALSO THAT A SMALLER LIMIT OF LIABILITY APPLIES TO JUDGEMENTS OR SETTLEMENTS WHEN THERE ARE ALLEGATIONS OF SEXUAL MISCONDUCT (SEE THE SPECIAL PROVISION "SEXUAL MISCONDUCT" IN THE POLICY).

> \* \* \* \* \* \*

> This policy does not apply:

> \* \* \* \* \* \*

> (p) to any wrongful act committed with knowledge that it was a wrongful act.

> \* \*. \* \* \* \*

> SPECIAL PROVISIONS

> 1. **Sexual Misconduct**—The total limit of the Company's liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any insured(s) involving any actual or alleged erotic physical contact, or attempt thereat or proposal thereof:

> (a) by any Insured or by any other person for whom any Insured may be legally liable; and ...

> In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid $25,000 aggregate limit of liability shall be part of, and not in addition to, the limits of liability otherwise afforded by this policy.

Policy at 1–3, Exh. B, Boyle's Decl., docket no. 12.

In seeking summary judgment, American Home first argues that paragraph (p) of the exclusionary provisions excludes coverage for the acts alleged in the underlying action because the alleged sexual contacts, designated as "unprofessional conduct" under RCW 18.-

130.180(24), constitute "wrongful act[s]" within the meaning of paragraph (p).

The Scotts admit that the alleged sexual acts are "wrongful acts" within the meaning of exclusion (p), Defendants' Answers, docket no. 5, ¶ 17, but contend that exclusion (p) is unenforceable as it conflicts with the sexual misconduct provision. They claim that this conflict or inconsistency within the Policy creates an ambiguity, which must be resolved in favor of coverage.

■ Under Washington law, an insurance policy provision is ambiguous when it is fairly susceptible to two different interpretations, both of which are reasonable. *McDonald*, 119 Wash.2d at 733, 837 P.2d at 1004. If the policy language is ambiguous, it is proper to construe the effect of such language against the drafter. *Id.* "Thus, if an insurance policy's exclusionary language is ambiguous, the legal effect of such ambiguity is to find the exclusionary language ineffective." *Id.* at 733, 837 P.2d at 1005.

■ The Court finds that the Policy is ambiguous. Although the alleged sexual misconduct constitutes "wrongful acts" under exclusion (p), the Policy clearly provides coverage for sexual misconduct under paragraph (1) of the Special Provisions of the Policy. If the Court were to adopt American Home's argument that exclusion (p) excludes all coverage for sexual misconduct, there would be no need for the special provision at issue which limits coverage for sexual misconduct. Based on the contract as a whole, its subject matter and its context, the Court rules as a matter of law that the Policy must be construed to provide coverage for the alleged sexual misconduct under the special provision concerning sexual misconduct.

D. *The $25,000 Sublimit under the Sexual Misconduct Provision*

■ American Home next argues that since sexual misconduct is alleged, the Special Provisions of the Policy limit liability to $25,000 for *all* claims arising out of the relationship between Dr. Cohen and Ms. Scott, even claims alleging non-sexual misconduct. It contends that as long as a victim alleges any actual or alleged "erotic physical contact, or attempt thereat or proposal thereof" at any time, "any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the ... $25,000 aggregate limit of liability." Policy at 3.

In response, the Scotts argue that the sublimit provision is ambiguous and invites more than one possible interpretation. They urge the Court to interpret it to limit coverage only for claims alleging sexual misconduct, but not those alleging other misconduct. They contend that Dr. Cohen engaged in different courses of treatment with Ms. Scott throughout their therapy relationship. In their view, *prior* to the sexual misconduct, Dr. Cohen committed various negligent acts constituting malpractice in connection with Ms. Scott's treatment. In the amended complaint in the underlying state action, the Scotts allege that Dr. Cohen failed to anticipate two suicide attempts, one of which occurred prior to the alleged sexual misconduct. *See* Amended Complaint, docket no. 25; *see also* Dr. Tsai's Decl., docket no. 21. The Scotts claim that those incidents of nonsexual, negligent conduct constitute the basis for claims arising out of a different course of treatment, to which the general liability limit of $1,000,000 should apply.

The Court finds that the special provision concerning sexual misconduct is not ambiguous. The provision clearly states that the sublimit applies to any and all causes of action arising out of the *same or related* professional treatment or relationship. Both the non-sexual and sexual misconduct alleged in the original and amended complaint in the underlying case arose out of the psychotherapy relationship between Dr. Cohen and Ms. Scott. It must, therefore, follow that under the Policy, the maximum amount of American Home's liability to indemnify Dr. Cohen is $25,000, unless the Policy limitation is otherwise void.

This finding is supported by two unpublished opinions, submitted by American Home. Those opinions discuss the identical policy language. In both cases, the courts found that the language was unambiguous and that the provision applied to all claims of misconduct, whether sexual or nonsexual,

arising out of the same therapeutic relationship. *See American Home Assur. Co. v. Oraker, et. al.,* No. 90CV6483 (Colo.Dist.Ct. March 5, 1992) and *American Home Assur. Co. v. Bylund, et. al.,* No. CV 91–6091 (C.D.Cal.1992), Exhs. C & D respectively, Boyle's Decl., docket no. 12.

### E. Public Policy

"Public policy is not a precisely defined term, and, in fact, may not be amenable to an exact definition." *Brown v. Snohomish County Physicians Corp.,* 120 Wash.2d 747, 845 P.2d 334, 337 (1993).

■■■ "The term 'public policy,' ... embraces all acts or contracts which tend clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel." *LaPoint v. Richards,* 66 Wash.2d 585, 594–95, 403 P.2d 889, 895 (1965), *quoting, Goodier v. Hamilton,* 172 Wash. 60, 62, 19 P.2d 392, 393 (1933). "Public policy is not static, but may change as the relevant factual situation and the thinking of the times change. *Brown,* 845 P.2d at 338. In Washington, limitations in insurance policies which are contrary to public policy will not be enforced. *State Farm General Ins. Co. v. Emerson,* 102 Wash.2d 477, 481, 687 P.2d 1139, 1142 (1984).

### 1. Limitation on Non-sexual Misconduct Claims Where Sexual Misconduct Claims are Present:

■■■ Through statutes and case law, Washington has expressed a strong public policy of encouraging victims of sexual misconduct by therapists to disclose such misconduct. Under RCW 18.130.080, consumers, health care facilities, and state and local governmental agencies may file a complaint with the disciplinary authority of psychologists for sexual misconduct by a psychologist. Under RCW 18.130.185, the attorney general or any other person may file an action to enjoin a psychologist from committing any unprofessional conduct, including sexual contacts with the patient.

Washington courts have made it clear that compensation for patients sexually exploited by therapists is in the public interest. In *Omer v. Edgren,* 38 Wash.App. 376, 685 P.2d 635 (1984), a woman sued her psychiatrist for damages arising out of a sexual relationship initiated during therapy. The trial court granted summary judgment dismissing a claim for malpractice on the grounds that even if there had been a sexual relationship between the client and her therapist, there was no causal relationship between the sexual relationship and alleged harms caused to the patient by that relationship. The Court of Appeals reversed, quoting *Roy v. Hartogs,* 81 Misc.2d 350, 353–4, 366 N.Y.S.2d 297, 301 (1975):

> ... there is a public policy to protect a patient from the deliberate and malicious abuse of power and breach of trust by a psychiatrist when that patient entrusts to him her body and mind in the hope that he will use his best efforts to effect a cure. That right is best protected by permitting the victim to pursue civil remedies, not only to vindicate a wrong against her but to vindicate the public interest as well.

*Omer v. Edgren,* 38 Wash.App. at 379, 685 P.2d at 637. The *Omer* decision demonstrates a strong public policy favoring disclosure of and compensation for harms cause by sexual misconduct of mental health providers.

The present provision of American Home's Policy will discourage or preclude bona fide claims of sexual misconduct which arise out of the same or related therapeutic treatment in which non-sexual misconduct has also occurred. Because the sublimit extends to all other non-sexual misconduct claims, a victim will be reluctant to allege claims of sexual misconduct. In effect, a toleration of sexual misconduct by licensed psychologists is encouraged. If a victim exercises rights under Washington law to seek injunctive relief against the therapist who has sexually abused the victim, or if the victim cooperates with others who have initiated either civil or criminal action against the therapist, insurance companies with policies such as American Home's could then assert that the sub-

limit of $25,000 would apply to the entire cause of action because of the accompanying claims or evidence of sexual misconduct. In a practical sense, victims of sexual misconduct would be worse off by the existence of a policy sublimit of this breadth than if sexual misconduct claims were excluded from the Policy altogether. Such a result is contrary to public policy. *See Brown v. Snohomish County Physicians Corp.,* 120 Wash.2d 747, 845 P.2d 334, 342 (1993).

American Home argues that its policy focuses on the conduct of the insured, which increases the risk to the insurer, and thus is permissible regardless of the impact it might have on the victims of sexual misconduct. Washington allows insurers to protect themselves from increased risk by excluding certain conduct or activities by an insured from coverage. *St. Paul Fire & Marine Ins. Co. v. Circle Bar J. Boys' Ranch, Inc.,* 1 Wash. App. 377, 461 P.2d 567 (1969), *rev. denied,* 77 Wash.2d 962 (1970) (policy excluding coverage when an automobile was driven by a person under 25 years of age); *Royse v. Boldt,* 80 Wash.2d 44, 491 P.2d 644 (1971) (provision excluding coverage for any accident occurring while the vehicle was being operated by a driver other than the named insured, a resident of his household, or a driver specifically named in the policy).

To support a claim of increased risk to the insurer in sexual misconduct claims, American Home submits statistics noted in an unpublished opinion that addressed the identical policy language. *See American Home Assur. Co. v. Oraker,* No. 90CV6483 (Colo. Dist.Ct. March 5, 1992), Exh. C, Boyle's Decl., docket no. 12. That opinion cites evidence that "sexual misconduct claims were the single highest category of claims filed, 20%, and resulted in 56% of proceeds paid on all claims." *Id.* at 24. In *Oraker,* a Colorado state trial court held that the insurer's decision to limit a risk is not in and of itself violative of public policy. *Id.*

While the *Oraker* decision supports American Home's claims of increased risk as to sexual misconduct claims, American Home's argument that the sublimit should apply to all claims and is justified by risks to the insured is unpersuasive. Under the sublimit,

a single act of sexual misconduct by an insured is enough to significantly reduce American Home's liability for all other misconduct by the insured. There is no evidence before the Court that these non-sexual claims have resulted in any increased risk to the insurer. By imposing a $25,000 aggregate sublimit on all claims if sexual misconduct occurs during the same or related therapeutic treatment, American Home seeks to avoid liability for injuries caused by malpractice that is unrelated to the sexual misconduct. The sublimit allows the insurance company to benefit from the existence of a sexual misconduct claim by reducing the entire policy coverage, even coverage for non-sexual misconduct.

By imposing the sublimit on all claims rather than on the sexual misconduct claims, American Home's Policy sublimit focuses on the victim. In *Mutual of Enumclaw v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441 (1982), the Washington Supreme Court construed an insurance policy which excluded coverage for bodily injury to the insured's family members. The *Wiscomb* court held that "[a]n exclusion which denies coverage when certain victims are injured is violative of public policy." *Id.* at 209, 643 P.2d at 444. The *Wiscomb* exclusion was directed at the innocent family or household member who has no control over the vehicle's operation and who cannot be said to increase the nature of the insurer's risk. *Id.* Thus, the *Wiscomb* court refused to give effect to an exclusion which focused on the innocent victim. Similarly, the American Home sublimit focuses on the victim of sexual abuse by the therapist by reducing available coverage on all claims, even malpractice claims which are unrelated to the sexual misconduct. Like the exclusion in *Wiscomb,* the American Home policy sublimit

... becomes particularly disturbing when viewed in light of the fact that this class of victims is the one most frequently exposed to the potential negligence of the named insured.

*Wiscomb,* 97 Wash.2d at 208, 643 P.2d at 444.

American Home argues that sexual and non-sexual claims in a professional negligence case are often so intertwined that it is difficult or impossible to separate those

claims. The Court rejects this argument. The task of separating multiple claims and apportioning damages has been one of the traditional functions of the trier of fact. In the pending state case, the jury can apportion damages, if any, arising from the sexual and the non-sexual misconduct.

### 2. Limitation on Sexual Misconduct Claims

█ The Scotts argue that the Policy sublimit violates Washington public policy in its entirety because it has a disparate impact on, and thereby discriminates against, female victims of therapist misconduct. The Scotts rely on several Washington statutes prohibiting sex discrimination and on Article 31 of the Washington Constitution as evidence of Washington's public policy against such a discriminatory application of an insurance policy.[1] They have submitted uncontroverted evidence that approximately 90% of the victims of sexual misconduct are women. Dr. Jones Affidavit, doc. no. 22, ¶ 4.

According to the Scotts, because 90% of the victims of sexual harassment are women, the sublimit disproportionately affects a woman's ability to recover for a type of harm disproportionately inflicted on women by therapists. The sublimit provision before the Court also has the broader effect on victims of sexual misconduct of limiting recovery for all non-sexual misconduct claims arising out of the same therapeutic relationship where sexual misconduct claims are alleged. As a result, the victims of sexual misconduct, 90% of whom are women, are also disproportionately disadvantaged in their recovery for non-sexual misconduct claims. The question presented under these undisputed facts is whether the sublimit violates Washington public policy because of its disproportionate impact upon female victims of therapist misconduct.

In opposing the Scotts' argument that the Policy discriminates against women in violation of Washington public policy, American Home argues that no Washington law mandates liability insurance coverage at any level for mental health professionals. It argues that the Policy is gender neutral, and therefore cannot be said to discriminate against women. Finally, it argues that an insurer in Washington State may exclude or limit coverage when the limitations are based on the conduct of the insured and the risk to the insurer of such conduct.

In Washington, several statutes address sex discrimination in the insurance context. RCW 49.60.178 prohibits discrimination in the issuance of insurance contracts on the basis of sex. RCW 48.30.300 states that the terms and condition of an insurance contract shall not be restricted on the basis of sex. While these statutes prohibit discrimination on the basis of gender, they do not prohibit "fair discrimination on the basis of sex ... when bona fide statistical differences in risk or exposure have been substantiated." RCW 49.60.170 and RCW 48.30.300.

As noted above, American Home has failed to provide evidence supporting its argument that it can exclude even non-sexual misconduct claims where any allegation of sexual misconduct is present. However, it has provided evidence of increased risk for sexual misconduct. This suggests that the limitation on sexual misconduct is acceptable under Washington law. This conclusion is complicated, however, by the disparate impact evidence and arguments presented by the Scotts.

Two cases in which the Washington Supreme Court has weighed competing public policy issues involved in insurance policies that exclude members of protected classes suggest that a sublimit on sexual misconduct claims alone does not violate Washington public policy. First, in *E–Z Loader v. Travelers Indem. Co.,* 106 Wash.2d 901, 726 P.2d 439 (1986), the Washington Supreme Court reaffirmed its position that "[a] contract of

---

1. Among the statutes cited by the Scotts are RCW 18.83.050(7) (the Examining Board of Psychology may require persons licensed under RCW 18.83 to obtain and maintain professional liability insurance); RCW 49.60.175 (unfair practices by financial institutions); RCW 49.60–176 (unfair practice in credit transactions); RCW 49.60.178 (unfair practice in insurance transactions); RCW 49.60.180 (unfair employment practices); RCW 49.60.222 (unfair real estate transactions); and RCW 48.30.300 (prohibition of restrictions on insurance benefits based on sex of insured).

insurance against the party's own negligence will be enforced only if it is clearly and specifically undertaken by the insurer." *Id.* at 910, 726 P.2d 439. The court found that the insurance contract at issue did not cover intentional age or sex discrimination, and "decline[d] to expand [insurance] contracts to cover sex or age discrimination claims when the parties' intentions that they do so are not clearly undertaken." *Id.* at 911, 726 P.2d 439.

Similarly, in *Edwards v. Farmers Ins. Co.*, 111 Wash.2d 710, 763 P.2d 1226 (1988), the court held that an insurer may discriminate in insurance coverage on the basis of marital status, even though such discrimination is explicitly prohibited by state law, "when bona fide statistical differences in risk or exposure" have been substantiated by the insurer. *Id.* at 720, 763 P.2d 1226 (citing RCW 48.30.-300).

The Policy before this Court unambiguously limits American Home's liability for sexual misconduct claims to $25,000. American Home has cited evidence in *Oraker* of the increased risk to insurers of sexual misconduct claims. This Court, sitting in diversity, holds that the sublimit on the sexual misconduct claims does not violate Washington public policy.

### CONCLUSION

For the reasons stated in this opinion, the Court holds that the following portion of the American Home Policy is void as against public policy:

> In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause.

The Court further holds that the sublimit on sexual misconduct claims alone does not violate Washington public policy.

As a result, the Scotts' claims of non-sexual misconduct shall have a $1,000,000 limit of coverage, pursuant to the other terms and conditions of the Policy. Those claims relating to sexual misconduct shall have a reduced coverage amount of $25,000.

IT IS SO ORDERED.