**AMERICAN HOME ASSURANCE COMPANY, Plaintiff,**

v.

**Steven H. STONE, Sheila Hall, Peter Hall, and Psych Associates of Du Page, Chtd., Defendants.**

No. 93 C 1210.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 13, 1994.

John T. Wardrope, Robert A. Chaney, Purcell & Wardrope, Chtd., Chicago, IL, for American Home Assurance Co.

Tracy D. Kasson, Henry J. Burt, Jr., Rathje, Woodward, Dyer & Burt, Wheaton, IL, for Sheila Hall.

George Philip Lindner, Lindner, Speers & Reuland, P.C., Aurora, IL, for Peter L. Hall.

James M. Forkins, Jr., David P. Meyer, Robert G. Black, Hinshaw & Culbertson, Li-

sle, IL, for Psych Associates of Du Page, Chartered.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Defendants Sheila and Peter Hall went to defendant Psychotherapist Steven H. Stone ("Stone") for marital counseling. Stone engaged in a sexual relationship with Sheila Hall during professional treatment and therapy. Plaintiff American Home Assurance Co. ("American Home") brought this suit seeking a declaration that American Home's obligation to indemnify Stone is limited to $25,000 for any settlement or judgment entered in the underlying lawsuits filed by the Halls.[1] This matter is before the court on the parties' cross-motions for summary judgment.[2]

### Background

At all relevant times, defendant Stone was a psychotherapist/divorce mediator working for defendant the Psych Associates of Du Page, Chtd. ("Psych Associates").[3] Beginning on June 13, 1990, Sheila and Peter Hall began seeing Stone for marriage counseling. After the Halls had participated in several weekly joint sessions, Stone recommended and began individual therapy sessions with each of the Halls in July, 1990.

On March 18, 1992, Peter Hall filed suit against Stone and Psyche Associates in the Circuit Court of the Eighteenth Judicial Circuit, Du Page County, IL. In his negligence count against Stone, Peter Hall alleged, among other things:

> That during the aforedescribed counseling of this plaintiff, and the counseling of Plaintiff's wife, this defendant, contrary to his fiduciary obligations to this plaintiff, engaged in a course of sexual conduct with Plaintiff's wife when Defendant Stone

---

1. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states, and the amount in controversy exceeds the sum of $50,000. (Pl.'s Stmt. of Facts ¶ 6).

2. All of the parties have moved for summary judgment except defendant Stone. A default

judgment was entered against him on July 13, 1993.

3. On June 30, 1993, the court granted Psyche Associates' unopposed motion to intervene in this lawsuit.

knew, or reasonably should have known, that said conduct would make it impossible to dissolve [sic] the aforereferenced marital discord.

(Pl.'s Ex. B, First Amended Complaint of Peter Hall ¶ 4(e) at 2). Peter Hall also claimed intentional infliction of emotional harm on the same grounds. (*Id.* ¶ 4 at 4). Specifically, Peter Hall alleged that "[s]ome time in the fall of 1990, while still allegedly providing this plaintiff with marriage counseling services, [Stone] began sleeping and having sex with Plaintiff's wife who he was also providing marriage counseling to at the same time...." (*Id.* ¶ 5(a) at 4–5).

On June 9, 1992, Sheila Hall filed a complaint in the Circuit Court of Du Page County against Stone, Psych Associates, psychiatrist Phillip Helding,[4] and psychotherapist Leland Martin.[5] Sheila Hall's complaint included counts against Stone for malpractice, violation of the Sexual Exploitation in Psychotherapy Act, Ill.Rev.Stat., ch. 70, § 801, *et seq.*, and intentional and negligent infliction of emotional distress. Sheila Hall alleged, *inter alia:*

> In the course of treatment and therapy, Stone so aroused Plaintiff's emotions by the manipulation of the transference phenomenon that she fell in love with him.... As a result of this manipulation of the transference phenomenon, Plaintiff began a sexual relationship with Stone.
>
> ....
>
> That Plaintiff was a patient of Stone and was receiving psychotherapy from Stone, as a psychotherapist, when he began having sexual contact with her.
>
> That as a direct and proximate cause of Stone's sexual contact with the Plaintiff ... Plaintiff has experienced extreme pain and suffering, as well as emotional distress of a continuing and permanent nature, including an attempted suicide, which has required medical treatment.

(Ex. C, First Amended Complaint of Sheila Hall ¶ 10(a) at 2–3, ¶¶ 13, 14 at 4–5).

On July 8, 1993, Devin and Brenden Hall, through their father, Peter, filed a complaint in the Circuit Court of Du Page County against Stone, Psych Associates, and Phillip Helding. Brenden and Devin participated in several family therapy sessions and alleged:

> That during the aforedescribed [marriage] counseling, Defendant, Stone, contrary to his fiduciary obligations to [Devin and Brenden], engaged in a course of sexual conduct with Sheila Hall when Defendant Stone knew, or reasonably should have known, that said conduct would make it impossible to resolve the aforereferenced discord.

(Complaint ¶ 4(e) at 2; ¶ 4(e) at 10).

Additionally, Psych Associates has filed counterclaims for indemnity and contribution in the pending state court actions against Stone.

Stone is insured by plaintiff American Home under its Mental Health Counselor's Professional Liability Policy No. MHC–4304539, effective March 1, 1990 to March 1, 1991. The limits of liability are $1,000,000 for "each wrongful act or series of continuous, repeated or interrelated wrongful acts or occurrence," and $3,000,000 "aggregate." (American Home Policy, Declarations Page). However, at the top of the Declarations Page and on the first page of the Insuring Agreement the policy notes in small capital letters: "A smaller limit of liability applies to judgements or settlements when there are allegations of sexual misconduct (see the Special Provision "Sexual Misconduct" in the Policy)." The "Sexual Misconduct" provision limits liability to $25,000 aggregate

> for all damages with respect to the total of all claims against any Insured(s) involving any actual or alleged erotic physical contact, or attempt threat [sic] or proposal thereof ... by any Insured ... with or to

---

4. Helding counseled Sheila Hall and her son, Devin. Helding later recommended that the Halls see Stone for marriage therapy. Sheila also informed Helding about her sexual relationship and feelings for Stone. (Pl.'s Ex. C, First Amended Complaint of Sheila Hall ¶ 3 at 1–2; ¶ 9 at 15).

5. Martin counseled Stone and Sheila Hall about their relationship, and then Sheila individually. (Pl.'s Ex. C, First Amended Complaint of Sheila Hall ¶¶ 6–7 at 18–19).

any former or current patient or client of any Insured....

(*Id.*, Special Provisions, at 5–6).

American Home filed this action seeking a declaration that the $25,000 Sexual Misconduct limitation is applicable to its potential obligation to indemnify Stone. Plaintiff is providing Stone with a defense subject to a reservation of rights.[6]

On July 6, 1993, American Home filed a motion for summary judgment on the grounds that there is no genuine issue of material fact that the underlying claimants have alleged that Stone engaged in a sexual relationship with Sheila Hall and that therefore, American Home's obligation to indemnify Stone is limited to $25,000.

On July 20, 1993, Sheila Hall then filed a cross-motion for summary judgment on the grounds that the special provisions section of American Homes' policy is ambiguous and against public policy. On that same day, Peter Hall filed a motion for summary judgment adopting Sheila Hall's memorandum in support of her motion. On July 26, 1993, Psych Associates filed a motion for summary judgment on July 26, 1993 arguing that the special provisions are ambiguous and against public policy. Devin and Brenden Hall filed a motion for summary judgment on September 20, 1993 adopting the memoranda of Peter and Sheila Hall in support of their motion. On September 15, 1993, American Home filed an amended motion for summary judgment against all defendants, including Devin and Brenden Hall.[7]

### Summary Judgment

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265

(1986). The non-moving party must then set forth specific facts through affidavits or other materials that demonstrate disputed material facts that must be resolved at trial. *Id.* at 324, 106 S.Ct. at 2553.

### Discussion

Because the language of the Sexual Misconduct provision is at the heart of this dispute, the court quotes it in full.

1. *Sexual Misconduct*—The total limit of the Company's liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any Insured(s) involving any actual or alleged erotic physical contact, or attempt thereat [sic] or proposal thereof:

a) by any Insured or by any other person for whom any Insured may be legally liable; and

b) with or to any former or current patient or client of any Insured, or with or to any relative of or member of the same household as any said patient or client, or with or to any person with whom said patient or client or relative has a [sic] affectionate personal relationship.

In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid $25,000 aggregate limit of liability shall be part of, and not in addition to, the limits of liability otherwise afforded by this policy. The Company shall not be obligated to undertake to nor continue to defend any suit or proceeding subject to the aforesaid $25,000 aggregate limit of liability after said $25,000 aggregate limit of liability has been exhausted by payments for damages.

(Special Provisions Section, Policy at 5–6).

Plaintiff, American Home contends that the "Sexual Misconduct" provision is clear

---

6. Defense costs and expenses are not subject to the $25,000 aggregate limit. (Complaint for Declaratory Judgment ¶ 16 at 6).

7. These motions were originally referred to a Magistrate Judge on September 1, 1993 and this court withdrew the reference.

and unambiguous and argues that this provision is clearly applicable to this case because "the Halls allege in their complaints that Stone had a sexual relationship with Sheila Hall during a course of treatment and therapy." (Pl.'s Mem. at 2). Therefore, plaintiff reasons that Stone should be bound by this language because this limitation was prominently displayed and Stone had a duty to read it.

In addition, plaintiff contends that the breadth of the language "is no accident." (Pl.'s Mem. at 6). Specifically, plaintiff claims that since allegations of sexual exploitation by mental health professionals are often accompanied by arguably nonsexual malpractice allegations, the policy was designed so that "all causes of action arising out of the same or related courses of treatment by the insured are subject to the $25,000 aggregate limit." (Id. at 5–6). American Home also contends that all of the Halls' allegations "arise out of the same or related courses of professional treatment" and are subject to the $25,000 limitation.

Sheila, Peter, Devin and Brenden Hall argue that the $25,000 sublimit is against public policy because it has a disparate impact on female consumers of mental health. (Def. Sheila Hall's Mem. at 9). They further contend that the $25,000 limit as it applies to all claims (sexual and nonsexual) is against public policy because it discourages a victim from reporting a therapist's sexual misconduct and it prevents a victim who does report the sexual misconduct from collecting adequate damages. (Id. at 11). In addition, the Halls claim that even if the sublimit is held not to violate public policy, the phrase which subjects all claims "arising out of the same or related courses of professional treatment and/or relationships" to the sublimit is ambiguous and should be construed in their favor such that Stone's nonsexual misconduct should be subject to the $1,000,000 policy limits. (Id. at 15).

Psych Associates also argues that enforcement of the special provisions would violate public policy. In addition, defendant asserts that the sublimit is ambiguous, particularly

as to how it applies to its counterclaims against Stone. Psych Associates also contends that American Home's declaratory judgment action is premature because it seeks to have factual issues determined that are still pending in state court. (Def. Psych Associates' Mem. at 10). The court addresses Psyche Associates' argument that this case is premature, and defendants' ambiguity and public policy arguments in turn.

### Declaratory Judgment Action is not Premature

■ As an initial matter, the court rejects Psych Associates' contention that this declaratory judgment action is premature because it seeks to determine factual issues still pending in the underlying actions. In this regard, Psych Associates claims that Stone's alleged wrongdoing was intentional while the Halls claim his conduct was negligent. Psych Associates argues "American Home wants a declaration now that Stone's conduct was negligent". (Def.Psych Associates' Mem. at 10). The court disagrees.

This court has no intention of making a declaration regarding whether Stone's conduct was intentional or negligent, nor has the court read American Home's complaint as a request to do so. Rather, this action asks whether plaintiff's sexual misconduct provision would apply since there are allegations of "erotic physical contact." Moreover, defendants ask the court to conclude that the Sexual Misconduct provision would not apply here because it is void on the grounds of ambiguity and/or public policy. As another court in this district recognized under similar facts, "[t]he distinction between determining the limit of coverage under an insurance policy in the event of liability and determining that liability itself is patently clear." *American Home Assurance Co. v. Martin*, No. 92 C 1377, 1992 WL 123132, at *4, 1992 U.S.Dist. LEXIS 7357, at *11 (N.D.Ill. May 27, 1992) (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). This court agrees and rejects the argument that this declaratory judgment suit is premature.[8]

8. The court also rejects the argument that American Home is trying to abuse this court's jurisdiction because it filed a declaratory judgment action in the state court in *American Home Assur-*

## The Sexual Misconduct Provision is Not Ambiguous

 The language of an insurance policy is ambiguous if it is subject to more than one reasonable interpretation. *United States Fidelity and Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926 (1991). When interpreting an insurance contract, the court must examine the complete document and not an isolated part. *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987). If the words of an insurance policy are clear and unambiguous, the court must afford them their plain, ordinary and popular meaning and will not distort the language of a policy to create an ambiguity where none exists. *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992).

 The Halls argue that the ambiguity is created by the phrase "arising out of the same or related courses of professional treatment and/or relationships." They claim that the phrase may refer only to those courses of treatment in which sexual activity occurred. (Pl. Sheila Hall's Mem. at 15). However, analyzing the Sexual Misconduct provision as a whole, the court concludes that it means what it says: when "erotic physical contact"[9] is alleged or occurs, the $25,000 sublimit applies to any and all causes of action arising out of the same or related courses of professional treatment and/or relationships. In other words, American Home has written a policy that subjects all counseling malpractice claims to a $25,000 sublimit if sexual misconduct is involved, or has "tainted" the counseling relationship in any way.[10]

Further, this court's conclusion that this provision is unambiguous is bolstered by the fact that no court which has examined the identical policy language has found the special provision concerning sexual misconduct to be ambiguous. *See American Home Assurance Co. v. Cohen*, 815 F.Supp. 365 (W.D.Wash.1993); *American Home Assurance Co. v. Oraker*, No. 90CV6483 slip op. (Colo.Dist.Ct. March 5, 1992); *American Home Assurance Co. v. Bylund*, No. CV 91–6091 slip. op., 1992 WL 691795 (C.D.Cal. Feb. 4, 1992); *American Home Assurance Co. v. Gray*, No. C89–1168CV slip op. (Or.Dist.Ct. May 10, 1991).

 However, under Illinois law, an insurance policy is not to be interpreted in a factual vacuum. *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189 (7th Cir.1991). Here, the Halls claim that the instant facts are distinguishable from the previous cases which have examined this policy language. In particular, they contend that Sheila Hall's marriage counseling and her counseling as an individual, are separate courses of professional treatment.

The court is not persuaded that this "distinction" renders the policy language ambiguous. Stone had a sexual relationship with Sheila Hall, whom he had counseled individually and with her husband. Stone's relationship with Sheila Hall is at the heart of all of these claims for abandonment, and manipulation of the transference phenomenon. Presumably, this is precisely the type of situation that the sexual misconduct clause was designed to address.[11]

ance Co. v. Larson, No. 91 MR 0478 slip op. (Ill.Dist.Ct.1991), an unrelated case. Also, the court notes that American Home's motion was denied without opinion.

9. Psych Associates emphasizes that the policy does not define "erotic physical contact" and asserts that the phrase is susceptible to different interpretations. However, the fact that "erotic physical contact" is not further defined in the policy does not render the provision ambiguous. *See Pohrer v. Title Ins. Co.*, 652 F.Supp. 348, 353 (N.D.Ill.1987). Moreover, although the phrase is rather odd, it can be reasonably and unambiguously construed to mean "sexual contact."

10. Some commentators have noted that allegations of sexual exploitation by mental health pro-

fessionals are often accompanied by claims of arguably nonsexual negligent conduct. *See e.g.,* Linda Jorgenson, *Therapist–Patient Sexual Exploitation and Insurance Liability*, 27 Tort & Ins. L.J. 595, 609–10 (1992) (citing empirical evidence that sexual misconduct cases do not occur in the absence of other types of negligence).

11. In addition, cases such as *Cranford Insurance Co. v. Allwest Insurance Co.*, 645 F.Supp. 1440 (N.D.Cal.1986) may have prompted insurance companies to write very broad provisions to limit coverage whenever sexual misconduct is involved. In *Cranford*, the malpractice policy had a provision excluding coverage for damages awarded in suits involving sexual intimacy. However, since the psychiatrist's abandonment

■ Thus, the court rejects Psych Associates' claims that the Sexual Misconduct provision is ambiguous because it does not address whether it applies to counterclaims for indemnity or contribution. In determining whether a third-party claim for contribution or indemnity is covered under a liability insurance policy, the courts look to the nature of the underlying claim. *Midland Ins. Co. v. Bell Fuels, Inc.*, 159 Ill.App.3d 780, 111 Ill. Dec. 755, 756, 513 N.E.2d 1, 2 (1987). Since Psych Associates' claims "arise out of," Stone's course of treatment and relationship with Sheila Hall, the assertion that "technically" their counterclaims against Stone do not involve "erotic physical contact" is unpersuasive.

■ Lastly, Psych Associates argues that the special provisions are ambiguous because they conflict with exclusion (p) which states that the policy does not apply "to any wrongful act committed with knowledge that it was a wrongful act." In *Cohen*, American Home argued that exclusion (p) excludes all coverage for sexual misconduct. 815 F.Supp. at 369. There, the district court found that the policy was ambiguous, reasoning that "[i]f the Court were to adopt American Home's argument . . . there would be no need for the special provision at issue which limits coverage for sexual misconduct." *Id.* Consequently, the court ruled that the policy must be construed to provide coverage for the alleged sexual misconduct under the special provision.

This court is not persuaded that provision (p), which is apparently an exclusion for intentional conduct, renders this contract ambiguous. Presumably, one of the things the jury will be deciding in the state case is whether certain conduct by Stone was negligent or intentional. In any event, the court agrees that the special provisions sublimit is

clearly triggered for all claims when sexual misconduct is alleged, as is the case here. Based upon the foregoing, the court concludes that the special provisions on sexual misconduct are unambiguous.

Further, despite the Halls' argument to the contrary, there is no question of material fact in this case that all of the alleged causes of action against Stone arise out of *the same or related courses of professional treatment and/or relationships.*[12] Specifically, Stone met with all four members of the Hall family during his course of treatment/relationship with Sheila Hall. The Halls went to Stone for couple therapy, individual therapy, family therapy, mediation sessions, and child therapy. (*See* Defs.' Devin and Brenden Halls' Complaint at 1–2). Moreover, all defendants' allegations against Stone clearly focus on the alleged sexual misconduct by Stone.[13] Therefore, it is clear that all of the alleged causes of action arise out of these related courses of professional treatment and/or relationships.[14] Thus, on these facts, the $25,000 sublimit would be enforceable unless it violates public policy.

### The Sexual Misconduct Provision is Not a Violation of Public Policy

■ The general provisions governing the construction and interpretation of insurance contracts are the same as those controlling other contracts. *Dempsey v. National Life and Accident Ins. Co.*, 404 Ill. 423, 88 N.E.2d 874 (1949); *Zitnik v. Burik*, 395 Ill. 182, 69 N.E.2d 888 (1946). It is well established that courts will not enforce a private contract which is contrary to public policy. *O'Hara v. Ahlgren, Blumenfeld and Kempster*, 127 Ill.2d 333, 130 Ill.Dec. 401, 537 N.E.2d 730 (1989); *Roanoke Agency, Inc. v. Edgar*, 101 Ill.2d 315, 78 Ill.Dec. 258, 461 N.E.2d 1365 (1984). In determining the pub-

---

12. The affidavit of Dr. Rossiter does not compel a different conclusion. As American Home points out, Dr. Rossiter does not state or suggest that Stone's alleged misconduct occurred in "multiple, unrelated courses of treatment by Stone." (Pl.'s Mem. at 14).

of the patient was a covered claim under the policy, the insurer was held liable for all damages awarded on all claims based upon the theory of concurrent proximate cause. *Id.*

13. *See* Background section of this opinion and citations therein.

14. Moreover, defendants' "collateral" proximate causation argument seems misplaced here because this court concludes that all of the defendants' claims involve alleged "erotic physical contact" and that under this broad provision, all of their causes of action arise "out of the same or related courses of professional treatment and/or relationships."

lic policy of a state, the court should look to the State Constitution, statutes and judicial decisions. *See* S.H.A. Const. Art. 1, § 16; *McClure Eng'g Assocs., Inc. v. Reuben H. Donnelley Corp.,* 95 Ill.2d 68, 69 Ill.Dec. 183, 447 N.E.2d 400 (1983).

### The Halls' Arguments

The Halls' first argument is that the Sexual Misconduct provision violates public policy because it disproportionately disadvantages women. They claim this is so because women are more likely to be the victims of sexual misconduct by therapists. (*See* Def. Sheila Hall's Mem. at 9) (citing Bouhoutsos, *Sexual Intimacy Between Psychotherapists and Patients,* 14 Professional Psychology: Research and Practice 185, 188 (1983) which states 92% of the victims are women). In addition, the Halls allege that Illinois has expressed a strong public policy against sexual discrimination because it is prohibited in the Illinois Constitution, and laws relating to employment, real estate transactions, financial institutions, credit transactions, and public accommodations. (*See id.* at 10).

Assuming that this provision does disproportionately affect women and that Illinois has expressed a strong public policy against sex discrimination, it does not necessarily follow that insurance companies cannot limit certain risks because they disproportionately affect a certain sex. In this regard, the *Cohen* case is instructive.

In addressing this same sex discrimination question, the *Cohen* court considered Washington's statutes prohibiting sex discrimination, several statutes addressing sex discrimination in the insurance context, and the defendant's undisputed evidence of disproportionate impact. *Cohen,* 815 F.Supp. at 372. However, the court rejected this public policy argument because under Washington law, some discrimination based on sex is permissible when bona fide statistical differences in risk or exposure have been substantiated, and American Home had provided evidence of its increased risk. *Id.* The court also noted that two cases in the Washington Supreme Court suggested that a sublimit on sexual misconduct alone does not violate Washington public policy. *Id.* Here, unlike

*Cohen,* the Halls have not cited and the court has not uncovered insurance provisions addressing under what circumstances it is permissible to have provisions which adversely impact women. In addition, the parties have not submitted supporting documentation for their positions. The court simply does not have enough evidence to substantiate the alleged disproportionate impact or the alleged increased risk. On this record, the court has no basis for concluding that the American Home provision violates public policy because of its disproportionate impact on women.

▪ The Halls' second public policy argument is more compelling. They contend that the Sexual Misconduct provision may give victims of sexual exploitation the incentive to cover up claims of sexual misconduct which arise out of the same or related therapeutic treatment in which nonsexual misconduct has also occurred, and that this result is a violation of Illinois public policy. In addressing this very troubling aspect of American Home's policy the *Cohen* court reasoned:

> The present provision of American Home's Policy will discourage or preclude bona fide claims of sexual misconduct which arise out of the same or related therapeutic treatment in which non-sexual misconduct has also occurred. Because the sublimit extends to all other non-sexual misconduct claims, a victim will be reluctant to allege claims of sexual misconduct. In effect, a toleration of sexual misconduct by licensed psychologists is encouraged. If a victim exercises rights under Washington law to seek injunctive relief against the therapist who has sexually abused the victim, or if the victim cooperates with others who have initiated either civil or criminal action against the therapist, insurance companies with policies such as American Home's could then assert that the sublimit of $25,000 would apply to the entire cause of action because the accompanying claims or evidence of sexual misconduct. In a practical sense, victims of sexual misconduct would be worse off by the existence of a policy sublimit of this breadth than if sexual misconduct claims were excluded

from the Policy altogether. Such a result is contrary to public policy.[15]

*Cohen*, 815 F.Supp. at 371 (omitting citation to Washington Supreme Court case).

In this case, the Halls make the same type of argument pointing to the Sexual Exploitation in Psychotherapy Act ("Act"), 740 ILCS 140/1, 2 (1989), as support for their contention that the Sexual Misconduct provision violates Illinois public policy. The Act provides in pertinent part that "A cause of action against a psychotherapist for sexual exploitation exists for a patient or former patient for injury caused by sexual contact with the psychotherapist...." 740 ILCS 140/2 § 2(a).

Thus, the Act creates a cause of action for a patient who has suffered injury as a result of sexual exploitation by her psychotherapist, and expresses a policy of protecting victims of sexual exploitation. Based upon this Act, the Halls contend that the Sexual Misconduct Provision clearly violates public policy and that "[t]he Illinois Courts have never hesitated to declare void any portion of an insurance policy which is contrary to public policy." (Def. Sheila Hall's Mem. at 8). However, the two cases which the Halls cite in support are clearly distinguishable because both involve the uninsured motorist statute, 215 ILCS 5/143a, which specifically mandates that insurance companies provide uninsured motorists coverage.

■ Specifically, the Illinois uninsured motorist statute provides in relevant part:

No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle ... that is either required to be registered in this State or is principally garaged in this State shall be renewed, delivered, or issued for delivery in this State unless coverage is provided therein ... in limits for bodily injury or death set forth in Section 7–203 of the

Illinois Vehicle Code for the protection of persons insured thereunder who are legally entitle to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles....

215 ILCS 5/143a. Therefore, the clearly expressed public policy of this statute is to afford insured motorists who are injured by an uninsured motorist at least the same compensation as if the insured motorist had been injured by a motorist insured with the minimum coverage required by law. *Menke v. Country Mut. Ins. Co.*, 78 Ill.2d 420, 36 Ill.Dec. 698, 701, 401 N.E.2d 539, 542 (1980). For that reason, in *Squire v. Economy Fire & Casualty Co*, 69 Ill.2d 167, 13 Ill.Dec. 17, 22, 370 N.E.2d 1044, 1049 (1977), the Illinois Supreme Court held that an exclusion in an automobile insurance policy which made the uninsured motorist coverage dependent on the insured not being in a second family automobile violated the broad policy behind § 143a of providing this type of coverage. *Id.*, 13 Ill.Dec. at 22, 370 N.E.2d at 1049. Similarly, the Illinois Supreme Court reasoned that a clause purporting to except vehicles "owned by or furnished insured" from the definition of uninsured motor vehicles was unenforceable since it also was inconsistent with § 143a's extensive uninsured motorist coverage to all persons validly insured. *Illinois Emasco Ins. Co. v. Doran*, 160 Ill.App.3d 927, 112 Ill.Dec. 361, 363, 513 N.E.2d 970, 972 (1987). In sum, contrary to defendants' assertion, the Illinois Supreme Court has only declared certain insurance provisions in the automobile context void as against public policy when there is a statute which clearly requires insurance companies to provide uninsured motorist coverage in any automobile insurance policy issued.

Nevertheless, compensating patients of sexual exploitation by their therapists is clearly in the public interest. Sexual Exploitation in Psychotherapy Act, 740 ILCS 140/1, 2 (1989). *See Cohen*, 815 F.Supp. at 370–71. This incentive alone, however, is insufficient

---

**15.** More specifically, the *Cohen* court found that the very broad language which would include nonsexual claims violated public policy, but that a sublimit on just sexual misconduct claims was permissible. 815 F.Supp. at 371–73. However, this court notes that the *Cohen* decision may be

hard to implement. Even if juries are required to apportion damages for each individual allegation constituting negligence, as a practical matter, it may be difficult to determine which damages resulted from the nonsexual claims and which were a result of sexual misconduct.

to declare the provision void. *See Zeigler v. Illinois Trust & Sav. Bank*, 245 Ill. 180, 91 N.E. 1041, 1046 (1910) (a contract which may have given a doctor the incentive to kill his patient was insufficient to declare the contract void as against public policy). Moreover, it is significant that the Sexual Exploitation in Psychotherapy Act, makes no reference to the actions insurance companies should take to protect victims of psychotherapist sexual exploitation. The court also notes that the Illinois legislature has not required psychotherapists to obtain any form of professional liability insurance.[16] Thus, Illinois has not expressly stated through statute or judicial decision that insurance provisions must be drafted to further this policy. Moreover, as American Home notes, "it does not follow that the best way to discourage such conduct is to ensure that its perpetrators are fully protected from adverse financial consequences."[17] (Pl.'s Mem. at 11). Even if this court might favor a public policy which would expressly dictate insurance requirements, "public policy must be clearly defined and dominant, and should not be gleaned from general considerations of supposed public interests." *Hyatte v. Quinn*, 239 Ill.App.3d 893, 180 Ill.Dec. 427, 430, 607 N.E.2d 321, 324 (1993). Although this is a close question because of the troubling aspects of the policy, this court, sitting in diversity jurisdiction, declines to hold American Home's Sexual Misconduct provision void as against Illinois public policy in the absence of a more clear indication that insurance companies should be limited as to the amount or form of coverage they provide when sexual misconduct is alleged against a psychotherapist.

Lastly, this conclusion is bolstered by the numerous other courts that have analyzed the Sexual Misconduct provision or other insurance provisions which similarly limit or exclude coverage when sexual misconduct is alleged. *See Govar v. Chicago Insurance Co.*, 879 F.2d 1581 (8th Cir.1989); *Chicago Ins. Co. v. Griffin*, 817 F.Supp. 861 (D.Haw. 1993); *Cranford Ins. Co. v. Allwest Ins. Co.*, 645 F.Supp. 1440 (N.D.Cal.1986); *American Home Assurance Co. v. Oraker*, No. 90CV6483 slip op. (Colo.Dist.Ct. March 5 1992).[18] Although many of the courts may not have been presented with the specific public policy arguments made here, it is significant that they have all enforced the provisions.[19]

### Psych Associates' Arguments

 Defendant Psych Associates also argues that the Sexual Misconduct provision is against public policy, but for different reasons. Psych Associates claims that if the special provisions are enforced and they are found liable on a respondeat superior basis in the underlying action, their right to indemnity or contribution from Stone will be virtually extinguished leaving a "blameless" employer

16. In contrast, all motorists are required to have a certain amount of liability insurance. 625 ILCS 5/7–601.

17. American Home also maintains:
 For a very low premium ($209.00), Stone chose ... to purchase a policy that provides high limits ($1,000,000/$3,000,000) for lawsuits that do not include allegations of sexual misconduct. For lawsuits that do include such allegations, the policy still provides $25,000 coverage, plus payment of defense costs (up to $975,000) that are likely in a case such as this to total well in excess of 100 times the policy premium.... Obviously very large jury verdicts often result from trials involving the emotionally-charged subject of sexual exploitation by a psychotherapist. American Home's intent to provide limited indemnity for lawsuits containing such allegations, in exchange for very low premium, is clearly expressed in the policy.
 (Pl.'s Mem. at 10).

18. However, in *Oraker*, the court addressed the Sexual Misconduct provision at issue here and concluded that it was not against public policy because there was no statutory provision that the limitation violated, and it did not run afoul of general societal concerns. *Oraker*, slip op. at 23. *But see Cohen*, 815 F.Supp. at 371–72.

19. American Home also points out that the sexual misconduct provision has been approved by the American Psychiatric Association and by the Director of the Department of Insurance. A determination by the Director of the Department of Insurance that an insurance policy is neither unjust, unfair, nor contrary to the law or public policy of Illinois, although not binding upon the courts, is entitled to great weight as against the contention that such provision is against public policy. *Kirk v. Financial Security Life Insurance Co.*, 75 Ill.2d 367, 27 Ill.Dec. 332, 336, 389 N.E.2d 144, 148 (1978).

**778**

financially accountable for the culpable actions of Stone.

 Illinois has expressed a policy to allow plaintiffs to recover from employers for the wrongful actions of their employees if the acts are committed within the scope of the employment relationship. *Wilson v. Clark Oil & Ref. Corp.*, 134 Ill.App.3d 1084, 90 Ill.Dec. 40, 43, 481 N.E.2d 840, 843 (1985). Therefore, the court rejects defendant's assertion that encouraging plaintiffs to sue "blameless" employers is against public policy.

Similarly, the court rejects defendant's argument that the $25,000 sublimit is contrary to the reasonable expectations of third-party beneficiaries. Psych Associates provides no authority for its contention that an employer such as Psych Associates qualifies as a third-party beneficiary of a policy like the one at issue. Nor do the facts suggest that this clearly written policy is contrary to the reasonable expectations of a third-party beneficiary. Furthermore, the reasonable expectations doctrine is not recognized in Illinois. *American Country Ins. Co. v. Cash*, 171 Ill.App.3d 9, 120 Ill.Dec. 834, 836, 524 N.E.2d 1016, 1018 (1988). Lastly, the court is not persuaded that the sublimit is against Illinois public policy because it discourages settlement.

### *Conclusion*

For the foregoing reasons, American Home's motion and amended motion for summary judgment are granted. The court holds that the special provisions are unambiguous and do not violate Illinois public policy. Since the underlying lawsuits filed against Stone by Sheila, Peter, Devin and Brenden Hall all arise out of or are related to the allegations of Stone's "erotic physical contact" and professional treatment and relationship with Sheila Hall, the Sexual Misconduct provision's $25,000 aggregate would apply to the claims in the underlying lawsuits. The Motions for Summary Judgment of defendants Sheila Hall, Peter Hall, Devin Hall,

Brenden Hall and Psych Associates are denied.