AMERICAN HOME ASSURANCE
COMPANY, Plaintiff,

v.

Billy Carl STEPHENS, and
Rory Ross, Defendants.

Civil Action No. H–95–3282.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 5, 1996.

John Francis Sullivan, Fulbright & Jaworski, Houston, TX, for American Home Assurance Company.

Robert D. Bates, Bates & Lee, Houston, TX, for Billy Carl Stephens.

Arthur M. Glover, Jr., Houston, TX, Scott Monroe Clearman, McClanahan & Clearman, Houston, TX, for Rory Ross.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

Pending before this court are the following motions:

- a motion for summary judgment filed by plaintiff American Home Assurance Company ("American Home") (Docket Entry No. 7);

- a cross-motion for summary judgment filed by defendant Rory Ross ("Ross") (Docket Entry No. 8);

- a cross-motion for summary judgment filed by defendant Billy Carl Stephens ("Stephens") (Docket Entry No. 10);

- American Home's motion to strike Stephens' counterclaims (Docket Entry No. 18); and

- Stephens' motion for leave to file counterclaims (Docket Entry No. 20).

Based on a careful review of the pleadings and submissions, the summary judgment record, and the applicable law, this court GRANTS American Home's summary judgment motion; DENIES the cross-motions filed by Stephens and Ross; DENIES as moot American Home's motion to strike Stephens' counterclaims; and DENIES as moot Stephens's motion for leave to file counterclaims.

## I. BACKGROUND

This is a Declaratory Judgment Act insurance coverage suit. The plaintiff insurer, American Home, and the defendants, Stephens, the insured, and Ross, the plaintiff in the underlying case, dispute whether a $25,000 insurance policy limit applies to an arbitration award confirmed by a state court judgment.

In August 1992, American Home issued a claims-made policy of social worker's professional liability insurance to Stephens, a therapist. The insurance policy, number SWL–7940395, ("the Policy"), set a limit of $25,000 in the aggregate for a claim against the insured that included allegations of sexual misconduct. The Policy otherwise set limits of $3,000,000 in the aggregate and $1,000,000 for each wrongful act or series of wrongful acts or occurrences that did not fall within the sexual misconduct provision.

The declaration page for the Policy included a statement that Policy limits are reduced in cases where sexual misconduct is alleged. The same language appeared at the top of the front page of the Policy.

The sexual misconduct provision provided as follows:

### SPECIAL PROVISIONS

1. **SEXUAL MISCONDUCT**—The total limit of the Company's liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any Insured(s) involving any actual or alleged erotic physical contact, or attempt thereat or proposal thereof:

(a) by any Insured or by any other person for whom any Insured may be legally liable; and

(b) with or to any former or current patient or client of any Insured, or with or to any relative of or member of the same household as any said patient or client or with or to any person with whom said patient or client or relative has an affectionate personal relationship.

*In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related wrongful acts and/or occurrences and/or relationships shall be subject to the aforesaid $2,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid $25,000 aggregate limit of liability shall be part of, and not in addition to,*

the limits of liability otherwise afforded by this policy.

The Company shall not be obligated to undertake nor continue to defend any suit or proceeding subject to the aforesaid $25,-000 aggregate limit of liability after said $25,000 aggregate limit of liability has been exhausted by payments for damages.

(Docket Entry No. 7, Ex. 1, at 4) (emphasis added).

Between March 1988 and June 1992, Stephens was Ross's therapist. In January 1994, Ross sued Stephens in the 280th Judicial District Court of Harris County, Texas, in Cause No. 94–01341 (the "*Ross* Action"). Ross alleged that Stephens was negligent in failing properly to diagnose or treat her condition. Ross's state court petitions did not refer to sexual misconduct.

During discovery, Ross filed pleadings in which she alleged that Stephens was in a sexual relationship with her and sexually exploited her during the therapist/patient relationship. Ross also testified in her deposition that Stephens had engaged in numerous acts of sexual misconduct and exploitation, which formed a basis of her claims against him.

Pursuant to the Policy, American Home provided a defense to Stephens in the *Ross* Action, subject to a reservation of rights. American Home hired the law firm of Hirsch, Robinson, Sheiness & Glover to defend Stephens in the *Ross* Action. On July 10, 1995, the case was called to trial by the state court judge. Stephens asked that his appointed counsel withdraw and that his personal counsel, Robert Bates, be substituted in his place. (Docket Entry No. 11, Ex. F,) transcript of hearing held on July 10, 1995. Ross's counsel and Stephens' personal counsel confirmed their agreement to pass the trial setting and submit the case to binding arbitration. *Id.* American Home informed Stephens that American Home did not agree to submit the case to binding arbitration and did not agree to be bound by the outcome. (Docket Entry No. 11, Ex. G). American Home continued to offer Stephens a defense. *Id.*

Ross and Stephens submitted to arbitration on August 3, 1995. Opening statements and closing arguments were not recorded, nor was there a record of the pre-arbitration conference with the arbitrator. Stephens and his personal counsel essentially did not contest Ross's claims of misdiagnosis and mistreatment. Stephens' personal counsel asked his own client only two pages of questions during the entire proceeding.

The arbitration hearing record contains no evidence of Stephens' sexual exploitation of Ross. There was testimony that Stephens sexually exploited other patients, introduced in connection with Ross's request for punitive damages. The arbitrator awarded Ross $2,903,698.62 in actual damages.

American Home filed this declaratory judgment action, seeking a declaration that its limits of liability to the insured, Stephens, are $25,000, pursuant to the sexual misconduct provision in the Policy. Ross and Stephens filed a response to the motion for summary judgment, as well as cross-motions for summary judgment, seeking a declaration that the sexual misconduct provision does not apply or is unenforceable, and seeking the $3,000,000 policy limit.

## II. THE APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Under Fed. R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the moving party fails to meet its initial burden, the motion for

summary judgment must be denied, regardless of the nonmovant's response. *Little*, 37 F.3d at 1075.

Where the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.1988). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Little*, 37 F.3d at 1075, (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)).

In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

### B. Interpreting and Applying the Insurance Contract

Under Texas law, insurance policies are generally controlled by the rules of construction that are applicable to contracts. *Cicciarella v. Amica Mutual Ins. Co.*, 66 F.3d 764, 767–68 (5th Cir.1995), *citing Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). A court's primary concern is to give effect to the intentions of the parties as expressed by the policy language. *Cicciarella*, 66 F.3d at 768, *citing Ideal Lease Service, Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983).

"A contract is ambiguous only 'when its meaning is uncertain and doubtful or it is reasonably susceptible of more than one meaning.'" *Cicciarella*, 66 F.3d at 768, *quoting Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 917 (Tex.App.—Fort Worth 1988, writ denied). "The determination of whether terms are ambiguous is a question of law." *Cicciarella*, 66 F.3d at 768, *citing Yancey*, 755 S.W.2d at 917. "When the terms of an insurance policy are unambiguous, a court may not vary those terms." *Amica Mutual Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir.1995), *citing Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex.1965). "Ambiguous insurance contracts, however, will be interpreted against the insurer." *Texas Dept. of Housing and Community Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir.1995), *citing National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991).

### III. THE APPLICATION OF THE POLICY LIMITATION

■ The parties dispute whether Ross's claims against Stephens included sexual misconduct. This court has carefully examined the summary judgment record and finds that Ross's claims against Stephens included allegations of sexual misconduct covered by the Special Provision of the Policy.

Ross and Stephens argue that Ross did not plead sexual misconduct. Although Ross's petition did not explicitly allege sexual misconduct by Stephens, in two separate motions filed in the *Ross* action, Ross clearly alleged sexual misconduct by Stephens. In a Motion for Protection, filed on December 6, 1994, Ross stated:

Plaintiff has *alleged* in this suit that the defendant ... used his position and influence over the plaintiff [his patient' to have her ... *engage in sexual activities*....

(Docket Entry No. 7, Ex. 2, at 1) (emphasis added). In a Motion to Compel Deposition Testimony filed on February 16, 1995, Ross alleged that:

During the course of [his] treatment, defendant *sexually* and socially *exploited* plaintiff....

(Docket Entry No. 7, Ex. 3, at 1) (emphasis added).

Ross also testified in her deposition in her state court lawsuit about sexual exploitation and sexual misconduct by Stephens. Specifically, Ross testified that Stephens used his position and influence over her to have her

engage in sexual relations with him. (Ross deposition, Docket Entry No. 7, Ex. 4, at 130–131, 161, 237). Ross testified that she was a victim of childhood sexual abuse and that Stephen's sexual exploitation further injured her self-esteem. (*Id.*, at 233, 237). Stephens' testimony during his deposition, elicited by Ross's counsel, also demonstrates that Stephens' sexual misconduct was a principal issue in the case.[1]

Ross and Stephens argue that the arbitration award was not based on evidence of Stephens' sexual acts with Ross. However, the Policy provision does not require an award or judgment based on sexual misconduct. The sexual misconduct provision clearly states that if sexual misconduct by the insured is "alleged at any time, either in a complaint, during discovery, at trial or otherwise, ..." the total limit of liability for all claims is $25,000. The sexual misconduct provision is not triggered only by allegations contained in a petition or complaint, or by evidence presented at a trial or arbitration or made the basis of a judgment. Rather, if erotic physical contact or sexual misconduct is asserted at any stage of the underlying case, in "a complaint, discovery, trial, or otherwise," the provision becomes applicable.

Ross and Stephens also argue that no evidence of sexual conduct between Ross and Stephens occurring between 1988–1989 was presented to the arbitrator. (Docket Entry No. 10 at 6; Affidavit of Rory Ross). Ross's therapy relationship with Stephens extended from March 1988 through June 1992—more than four years. Ross argues that it is uncontested that no sexual relations occurred between Ross and Stephens before 1990, and that, therefore, her pre–1990 claims against Stephens are not affected by the sexual misconduct provision. (Docket Entry No. 8 at 3–4, 14). However, Ross concedes that Stephens promoted sexual contact between Ross and others after 1989, which is sexual misconduct. (Docket Entry No. 7, Ex. 3). Moreover, Stephens' deposition in the state court lawsuit included testimony that he was in a sexual relationship with Ross between 1988 and 1990. (Stephens Deposition, Docket Entry No. 11, Ex. A, at 127–28). The timing of the sexual relationship is disputed. However, this dispute is not material to the pending motions.

The sexual misconduct provision specifically states that "... all causes of action alleged and arising out of the same or related wrongful acts ... or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability...." All of Ross's claims and causes of action against Stephens arose out of the patient/therapist relationship, which extended from March 1988 through June 1992. It was during this therapeutic relationship that the sexual misconduct occurred.

---

1. Relevant excerpts from the deposition include the following:

Q. Now you were charged with violating the Texas Administrative Code Number 681.33(k) for **having sexual relations with a patient?**
A. That's the charge.

. . . . . .

Q. A therapist who takes a person, who is suffering from having been abused as a child, who is suffering from low self-esteem and depression and runs them through those sorts of tasks is committing malpractice, isn't he, sir?
A. Yes.
Q. **And the same would be true if the therapist had sexual relations with the patient, that would be bad, wouldn't it?**
A. Yes.

. . . .

Q. Then if they have a counselor who comes along and uses them for demeaning tasks, such as cleaning the house, doing the shopping, running errands, that is going to take that person and can virtually crush them, can't it?

A. It could.
Q. **If you top that off with sex at the will of the counselor, can you take this person to the brink of suicide by doing these sorts of things?**
A. That's possible.

. . . .

Q. **Now did you have sex with my client?**
A. Yes.
Q. **Did you have sex with my client while she was a patient of yours?**
A. Yes.

. . . . . .

Q. **Okay, during the period that you were giving counselling sessions to Ms. Ross, were you also having sexual relations with her?**
A. There were some brief sexual encounters, yes.
Q. **Does that mean sexual intercourse?**
A. Yes.

(Docket Entry No. 11, Ex. A) (emphasis added).

Other courts have held that policy limits for sexual misconduct, very similar to the one at issue here, apply when allegations of sexual exploitation are mixed with allegations of other wrongdoing by the therapist. The Seventh Circuit recently observed that the sexual misconduct provision is broadly drafted because such misconduct cannot be viewed apart from the other aspects of the therapist/patient relationship:

[C]ourts that have dealt with therapists' mishandling of the transference phenomenon and the concomitant therapist-patient sexual relationship have recognized that the sexual relationship simply cannot be viewed separately from other aspects of the therapist's malpractice or the therapeutic relationship developed between the therapist and the patient. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 701–02 (Minn.1990) ("When ... the transference phenomenon pervades the therapeutic alliance, we believe the sexual conduct between therapist and patient arising from the phenomenon may be viewed as the consequence of a failure to provide proper treatment of the transference."); *L.L. v. Medical Protective Co.,* 122 Wis.2d 455, 362 N.W.2d 174, 177–78 (App.1984) ("a sexual relationship between therapist and patient cannot be viewed separately from the therapeutic relationship between them"). *See also Govar v. Chicago Inc. Co.,* 879 F.2d 1581 (8th Cir. 1989) (rejecting claim that sexual acts were only one factor, not an "essential element" in the therapist's malpractice; upholding the application of insurance policy provision that excludes claims arising out of any sexual acts allegedly performed by the insured).

*American Home Assurance Co. v. Stone,* 61 F.3d 1321, 1330 (7th Cir.1995).

The arbitration award in the instant case does contain a specific fact finding that "[d]efendant's [Stephens'] treatment of the transference phenomena between himself and [p]laintiff [Ross] fell below the standard of care expected of a professional counselor." (Docket Entry No. 8, Ex. 5). As the Seventh Circuit found in *Stone,* courts considering the application of virtually identical provisions have noted that a sexual relationship between a therapist and patient is a result of failing properly to treat transference. *Stone,* 61 F.3d at 1330, *St. Paul Fire & Marine Ins. Co.,* 459 N.W.2d at 701–702; *Medical Protective Co.,* 362 N.W.2d at 177–78.

In *American Home Assurance Co. v. Bylund,* No. CV91–6091, 1992 WL 691795 (C.D.Cal. Feb. 4, 1992), the sexual relationship between the psychologist and the patient did not materialize until thirteen months into the therapy relationship. The Policy contained a sexual misconduct provision similar to the one at issue here. The court, faced with an argument similar to that made by Ross and Stephens, found that the limitation was triggered by the psychologist's sexual misconduct and applied the provision to limit coverage for all of the plaintiff's causes of action, even those pre-dating the sexual relationship. *Id.* at *4; *see also Govar v. Chicago Ins. Co.,* 879 F.2d 1581 (8th Cir.1989); *Chicago Ins. Co. v. Griffin,* 817 F.Supp. 861 (D.Haw.1993); *Cranford Ins. Co. v. Allwest Ins. Co.,* 645 F.Supp. 1440 (N.D.Ca.1986).

The same result applies to this case. By her own admission, Ross was induced into sexual relations with Stephens for at least two to two and a half years during the therapy relationship. Ross was a victim of sexual abuse as a child. (Docket Entry No. 7, Ex. 4 at 233). Even though Ross carefully avoided explicit reference to sexual exploitation by Stephens during the arbitration itself, her claim for significant damages was based upon the therapist's sexual exploitation. In determining the applicability of an exclusion or special provision in an insurance policy, the focus is on the origin of the damages, not the legal theory asserted for recovery. *Continental Casualty Co. v. Hall,* 761 S.W.2d 54, 56 (Tex.App.—Houston [14th Dist.] 1988, writ denied), *cert. denied,* 495 U.S. 932, 110 S.Ct. 2174, 109 L.Ed.2d 503 (1990).

The summary judgment record in this case, like others in which virtually identical policy limits have been litigated, shows that Ross's suit against Stephens included allegations of sexual misconduct, with other allegations of mistreatment and misdiagnosis. Based on the summary record before this

court, the sexual misconduct coverage limitation applies to the underlying action and judgment. The Special Provision applies to limit coverage for Stephens at $25,000 for all of Ross's claims.

## IV. THE PUBLIC POLICY ARGUMENT

Ross and Stephens argue that it is against public policy for an insurer to provide lesser coverage for a psychologist's nonsexual misconduct, if sexual misconduct is also alleged as having occurred in the same or related course of professional treatment, than the coverage that is provided where only nonsexual misconduct is claimed. Ross and Stephens cite *American Home Assurance Co. v. Cohen,* 124 Wash.2d 865, 881 P.2d 1001, 1005 (1994), to support their argument.

The majority of the courts have not found the application of a sexual misconduct coverage limitation to violate public policy. *See, e.g., American Home Assurance Co. v. Stone,* 61 F.3d at 1325; *American Home Assurance Co. v. Smith,* 462 S.E.2d 441, 443 (Ga.App. 1995); *McConaghy v. RLI Ins. Co.,* 882 F.Supp. 540, 542 (E.D.Va.1995); *Bylund,* 1992 WL 691795. As the court held in *Stone:*

> American Home's Professional Liability insurance policy, under which Stone was insured, was issued for a premium charge of $209.00 per year. The "Sexual Misconduct" provision can be considered a legitimate effort by American Home to offer a reasonably priced insurance policy and at the same time limit its exposure to a substantial hazard or risk of loss.... For the vast majority of mental health professionals who never engage in sexual exploitation of their patients, this kind of insurance policy fills an important gap in the marketplace. Voiding the "Sexual Misconduct" provision may produce the unintended result of requiring the well-behaving majority to subsidize the misconduct of a few, and increasing health care cost.

. . . .

The policy questions of whether a psychotherapist should obtain malpractice liability insurance, and how much coverage, are within the province of the Illinois legislature. We will not expand a mutually binding private insurance contract on public policy grounds simply because the expansion might be more desirable or advantageous to a third-party beneficiary of the insurance contract. No matter how sympathetic we might be with the [appellants'] position as victims of Stone's alleged misconduct, the [appellants'] public policy argument is nothing more than an attempt to rewrite a private agreement which the tortfeasor, Stone, had entered into with his insurer, American Home.

61 F.3d at 1326–27.

Other courts have analyzed the same or similar sexual misconduct provisions, which limit or exclude coverage for all claims when sexual misconduct is alleged, and have enforced the provisions. *See, e.g., Govar v. Chicago Ins. Co.,* 879 F.2d 1581 (8th Cir. 1989); *Chicago Ins. Co. v. Griffin,* 817 F.Supp. 861 (D.Haw.1993); *Cranford Ins. Co. v. Allwest Ins. Co.,* 645 F.Supp. 1440 (N.D.Ca.1986).

The court in *Stone* also rejected the same argument asserted by Ross and Stephens, that the coverage limit is void as against public policy and the Equal Protection Clause because it disproportionately impacts female victims. In *Stone,* the Seventh Circuit stated as follows:

> Equally unpersuasive is the appellants' argument that the "Sexual Misconduct" provision in the insurance contract discriminates against women and thus also violates the Illinois public policy of prohibiting gender discrimination.... The Illinois insurance regulations do not expressly prohibit insurance companies from limiting risks that affect disproportionately a particular group of third party beneficiaries (who are of the same gender) of the insurance policies. In fact, the Illinois Department of Insurance specifically allows insurers to differentiate in rates on the basis of sex if "such classification or differentiation is based upon [documented] expected claim costs and expenses...." *See* Ill.Admin.Code title 50, ch. 1, § 2603.40. Thus, even if the third party beneficiaries of the insurance policies are within the zone of interest of these regulations, insurers may still differentiate rates on the basis of sex

by demonstrating a bona fide statistical difference in risk. Indeed, a number of studies have reported that psychotherapists' sexual involvement with patients is a leading cause of all private psychotherapist malpractice claims and is the most frequent source of litigation against psychologists insured through the American Psychological Association. *See* Jorgenson, Bisbing & Sutherland, *Therapist–Patient Sexual Exploitation and Insurance Liability*, 27 Tort & Ins. L.J. 595, 596–97 (1992). We are of the opinion that the insurance policy at issue is neutral on its face, is applied without regard to the sex of the insured, and legitimately limits coverage for the undisputed higher risks involved in psychotherapists' practice. We, therefore, do not agree that it is against the public policy of Illinois simply because more women may be affected as the third party beneficiaries of the insurance policy. 61 F.3d at 1330–31.

## V. THE POLICY LANGUAGE IS NOT AMBIGUOUS

Ross and Stephens argue that the Policy provides $1,000,000.00 in coverage for each "wrongful act or series of wrongful acts or occurrences," and that the acts alleged in Ross's underlying suit are "wrongful acts" under both the general policy provisions and under the special policy limitation for sexual misconduct. Defendants assert that the Policy is therefore ambiguous.

No court which has examined this sexual misconduct provision has found it to be ambiguous. *See American Home Assurance Co. v. Stone*, 864 F.Supp. 767, 773 (N.D.Ill. 1994); *McConaghy*, 882 F.Supp. at 542; *Bylund*, 1992 WL 691795, at *2–3.

A policy provision is only ambiguous when it is capable of two or more constructions, both of which are reasonable. *Western Heritage Ins. Co. v. Magic Years Learning Centers*, 45 F.3d 85, 88 (5th Cir. 1995). "When no ambiguity exists, a court must give the words of an insurance policy their plain meaning." *National Union Fire Ins. Co. v. CNA Ins. Cos.*, 28 F.3d 29, 32 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995), *citing*

*Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). Courts should not strain to find an ambiguity if, in doing so, they defeat the probable intentions of the parties, even when the result is an apparently harsh consequence to the insured. *Yancey v. Floyd West and Co.*, 755 S.W.2d 914, 918 (Tex.App.—Fort Worth 1988, writ denied), *citing Calcasieu–Marine Nat'l Bank v. American Emp. Ins.*, 533 F.2d 290, 295 (5th Cir.1976), *cert. denied*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). A finding of an ambiguity in policy language cannot be based upon an unreasonable understanding of the policy language on the part of the insured.

In finding the sexual misconduct provision unambiguous, the district court in *Stone* stated that:

[The Sexual Misconduct Provision] means what it says: when "erotic physical contact" is alleged or occurs, the $25,000 sub-limit applies to any and all causes of action arising out of the same or related courses of professional treatment and/or relationships. In other words, American Home has written a policy that subjects all counseling malpractice claims to a $25,000 sub-limit if sexual misconduct is involved, or has "tainted" the counseling relationship in any way.

864 F.Supp. at 773

Defendants have not presented a reasonable alternative construction of the sexual misconduct provision. Defendants' complaint about the effect of the provision does not make it ambiguous. *See Puckett*, 678 S.W.2d at 938.

Applying the ordinary and usual meaning of "alleged," the phrase in the Special Provision means that if sexual misconduct is stated or asserted at any time, the sub-limit applies. The Special Provision does not require that such a claim be stated or asserted in a pleading, as defendants contend. This interpretation is consistent with the entirety of the phrase in which "alleged" is used. By listing "alleged ... in a complaint" as one possibility, the Policy clearly contemplates that sexual misconduct by the insured can be raised in a pleading or asserted in discovery, at trial, or otherwise.

## VI. CONCLUSION

The underlying lawsuit included allegations of sexual misconduct that are covered by the special coverage limitation. This court GRANTS American Home's motion for summary judgment and DENIES the cross-motions filed by Ross and Stephens.

Stephens' proposed counterclaims are based on his contention that the special policy limitation does not apply. Because the court has already determined that the limitation does apply, the counterclaims are moot. Stephen's motion for leave to file counterclaims and American Home's motion to strike Stevens' counterclaims are DENIED as moot.

Counsel are to submit a proposed final judgment consistent with this opinion within 10 days from the date this opinion is entered.